## STATE v. LEVELLE.

1. PRESUMPTIONS—DEADLY WEAPON.—Every sane man is presumed to intend the ordinary and probable consequences of any act which he purposely does, and so malice will be inferred from the use of a deadly weapon, if not rebutted by other testimony.

2. IMPLICATION OF MALICE.—There was no error in instructing the jury in a murder case, that if the act which produced death be attended with such circumstances as indicate a wicked, depraved, and malignant spirit, the law will imply malice without reference to what was passing in the prisoner's mind at the time.

3. WHERE THE CASE STATES NO FACTS, this court cannot declare that matters stated in the charge to the jury were inapplicable and misleading.

4. MANSLAUGHTER—PROVOCATION BY WORDS.—Where a homicide is committed with a deadly weapon, provocation by words only, no matter how opprobrious, would not be sufficient to reduce the crime from murder to manslaughter.

5. CONSEQUENCES OF UNLAWFUL ACT.—The law implies that a person who does an unlawful act intends the natural and probable consequences thereof, and is therefore responsible for such consequences.

6. MATTERS CONSIDERED IN FAVOREM VITAE.—A question raised in argument but not by exception, and not sustained by the facts before this court, and other questions urged under a general exception, considered *in favorem vitae.*

7. ATTEMPTED SUICIDE RESULTING IN HOMICIDE.—Suicide being a felony, one who in an unlawful attempt to take his own life with a deadly weapon, unintentionally kills another, is guilty of murder.

8. MORAL INSANITY or uncontrollable impulse is not, in this State, a defence against a charge of crime.

9. MALICE—CHARGE AS A WHOLE.—The charge having correctly informed the jury as to malice, there was no error in omitting to use the word "intentionally" when he further charged that "malice means the doing of an unlawful act without justification or excuse."

Before ALDRICH, J., Charleston, June, 1890.

This was an indictment against Napoleon Levelle, for the murder of Belle, his wife, on February 17, 1890. The judge charged the jury as follows:

You have been selected from the body of the County of Charleston, as good and true men, and impanelled in pursuance of the law as a jury, to pass upon the allegations contained in the indictment against the defendant at the bar, Napoleon Levelle, charged with the murder of Belle Levelle. The case has been ably and learnedly argued. You heard much at the beginning of the case as to comments in the newspapers and otherwise, so much so that the jurors were required to be sworn on their *voir dire*. Fortunately for us, this is a law-abiding community, where peace and good order reign and law blesses the people of your community. Here, in this temple of justice, at the threshold of that door, public opinion stands back abashed. It has no part or parcel in these proceedings. Here pure, simple justice is dispensed freely and alike to all. The rich have no advantage. The poor is bereft of no protection. In the eye of the law they are equal citizens, standing upon the same plane, punishable by the same law and protected by the same law. You are not here to pass upon any question which may affect individuals, as if you were trying the defendant in a case with an individual. You represent society—the country, of which country you are. The question is, has the defendant, the prisoner at the bar, violated the laws of society, that is, the law of the State, as charged and alleged in the indictment? Outside of those charges, and with any others, you have nothing to do.

Murder is the killing of any person with malice aforethought,

either express or implied.   Manslaughter is the killing of any person without malice aforethought.   That is the legal, technical definition, but, to make it appear clearly to your minds, it is usually defined that manslaughter is the killing of a person in sudden heat or passion upon sufficient legal provocation.   The distinction between murder and manslaughter is, that in murder the killing is done with malice, in manslaughter without malice. Malice, in the common acceptation of the term, as used in every-day talk, frequently means ill-will entertained by one towards another;  but in law malice means the doing of an unlawful act, without justification or excuse.   Malice need not exist for any definite period of time, nor does the law fix any time in which it must exist, to be recognized in law.   For instance, malice, if clearly formed in the mind of an individual, though it exist but for an instant, for a moment, is as clearly defined and constitutes malice in law as much as though that evil intent had been cherished or entertained for a week.

Whenever a killing of a human being is done with malice aforethought, then it is murder.   Where it is not done with malice aforethought, either express or implied, but is done in sudden heat and passion, upon sufficient legal provocation, then it is reduced from the higher offence of murder to the lower offence of manslaughter.   But note, that in manslaughter there must not only be the sudden heat and passion, but it must be super-induced by a sufficient legal provocation.   No words, however hard to be borne, however cruel, constitute a legal provocation, and the man, no matter how great the heat and passion may be, who slays his fellow-man upon no other provocation than mere words is guilty of murder.

Murder also consists in this :  when a man attempts to do an unlawful act, and especially when he uses unlawful means in accomplishing that act, he is responsible in law for the conse-quences of his own act.   By way of illustration :  if A intends to shoot B, and draws a pistol and fires upon B, intending to murder him, but misses B and strikes C, though it be his best loved one, then A is guilty in law of the murder of C, if the death was brought about while attempting to commit an unlawful act.   In the eye of the law, self-destruction—suicide—is an offence ; it is

an unlawful act, and if a man with a deadly weapon undertakes to take his own life, he is doing an unlawful act, and if in the commission or attempted commission of that act he takes the life of an innocent party standing by, then, in the eye of the law, that is murder.

I have charged you so far, on the ground that the person acting is presumed to be a man of sane mind, that is, a man with his senses about him. What I shall say about insanity and other matters connected with this case will be in connection with the requests to charge.

The solicitor requests me to charge : 1st. "Every man is presumed to be sane." That is good law.

2nd. "When one has been proved to be insane, the presumption is that he so continues until it is proved that he has recovered his sanity, but there is no presumption that fitful and exceptional attacks of insanity are continuous. It is only insanity of a chronic or permanent nature which, on being proved, is presumed to continue." I charge you that with this modification : where a party is adjudged, under any of the methods known to the law, as being insane, the presumption is that the insanity continues ; and when a person is subject to periods of insanity, as it were, the law leaves the question open whether or not any act committed was done in a lucid interval, or in the course of the disease.

3rd. "The overwhelming barbarity of the act will not be admitted as a presumption of insanity." I charge you that as good law.

4th. "When insanity is interposed by a defendant as a defence under a plea of not guilty in a criminal prosecution, the defence must be proved by a preponderance of evidence." That I charge you as good law.

5th. "A person who knows the difference between right and wrong ; that his act of homicide is morally a crime and punishable by law, cannot relieve himself from the consequences of murder by showing that he acted under an uncontrollable impulse." I charge you that also.

6th. "Where the killing is proved, and no more, the law will imply malice and make the act murder ; and when all the facts

and circumstances of the killing are in evidence, then the jury must say, from the testimony, what was the intention with which the act was committed, then it becomes a matter of proof, and there is no longer any implication." I charge you that, because all presumptions of law are intended as aids to reach a conclusion, but when the testimony is before the jury, the necessity for presumptions of law as to the meaning of that testimony, ordinarily speaking, no longer exists, and you are to judge of the testimony as it addresses itself to your judgment and discretion.

7th. "If the act which produced death be attended with such circumstances as indicate a wicked, depraved, and malignant spirit, the law will imply malice without reference to what was passing in the prisoner's mind at the time." That is good law.

8th. "No amount of eccentricity or queerness is sufficient to excuse a criminal act." I charge you that, because eccentricity is not insanity. Queerness is not insanity, not necessarily so. A man may be eccentric and he may be queer, but it does not follow necessarily that he is insane.

9th. "Malice will also be inferred from the use of a deadly weapon." That is a presumption or rule not so much of law as of common sense. Ordinarily, if a man in his senses uses a deadly weapon in a way calculated to do great harm to another person, the law and common sense says that he intended the result which his act brought about.

The defendant requests me to charge as follows: 1st. "The jury are instructed that the State is bound to make out all the essential elements of the crime charged beyond a reasonable doubt, and until this is done the accused is in no danger." I grant that request.

2nd. "The jury are instructed that the State, which affirms the malice, must in all cases prove it." I charge that.

3rd. "The jury are instructed that the failure of the State to show a motive for a crime, is a circumstance to be duly considered by the jury in weighing the question of guilt." That is good law. The motive which actuates a man's mind can sometimes be ascertained from his speech or from his acts, but sometimes the motive which impels him to act is not discoverable by the testimony; and while that motive may be a question which

the jury, like all other questions of fact, should weigh in reaching their conclusion, it is not absolutely necessary that the jury shall ascertain precisely the motive which actuated the defendant.

4th. "The jury are instructed that where the State fully proves a *prima facie* case, and a special defence, such as insanity, is interposed, it must be established only by such a preponderance of evidence as will satisfy the jury that the charge is not sustained beyond all reasonable doubt. If so established, the defendant should be acquitted." That is good law. It is copied from one of our Supreme Court decisions, and is, of course, correct.

5th. "The jury are instructed that when the defendant undertakes to prove insanity, the rule is that he shall not be required to prove it beyond a reasonable doubt, but by such preponderance of testimony as will overcome the legal presumption of sanity which attaches to every citizen of sufficient age, who has not been adjudged a lunatic." That is good law. It is taken from a decision of our Supreme Court, and is binding upon this court.

6th. "The jury are instructed that this question of sanity is one solely for the determination of the jury, and that upon this issue, as upon every material issue in the case, and upon the whole case, the accused is entitled to the benefit of every reasonable doubt." I charge you that.

7th. "The jury are instructed that if the accused was under such defect of reason from disease of mind as not to know the nature of the act he was doing, or not sufficiently conscious to know that his act was criminal, or was led by an uncontrollable impulse to commit suicide, he is not responsible, and should be acquitted." That I decline to charge, and I prefer to charge you in the language of our own courts. Where a person sets up the defence of insanity, the court says : In order to relieve himself from responsibility for a criminal act by reason of mental unsoundness, he, the prisoner, must show that he was under a mental delusion by reason of mental disease, and that at the time of the act he did not know that the act he committed was wrong or criminal or punishable, either the one or the other ; because, notwithstanding his mind may be diseased, if he is still capable of forming a correct judgment as to the nature of the act, or as

to its being morally or legally wrong, he is still responsible for his act and punishable as if no mental disease existed at all.

8th. "The jury are instructed that the law does not require that the insanity which absolves from crime should exist for any definite period, but only that it exists at the moment when the act occurred with which the accused stands charged." That is correct. Insanity is a question of fact. The gist of the question is, was the man insane or not?

9th. "The jury are instructed that the humane as well as just doctrine is that a reasonable doubt should avail a prisoner in a defence of insanity, as much as in any other fact." That is correct. That reasonable doubt accompanies the prisoner all through the case, and applies in an insanity case as well as any other. But it must be a reasonable, serious, substantial doubt, growing out of the testimony you have heard in the case.

*Mr. C. S. Bissell*, for appellant.

*Mr. Jervey*, solicitor, contra.

June 17, 1891. The opinion of the court was delivered by

MR. JUSTICE McIVER. The defendant was indicted for, and convicted of, the murder of his wife, and judgment having been entered on the verdict, he appeals upon the following grounds : "1st. Because his honor erred in charging the jury that 'malice will also be inferred from the use of a deadly weapon,' and that intent and malice are one and the same thing; when there is no presumption or inference of law, unless it is a natural and reasonable presumption from the facts proved. 2nd. Because the charge of his honor, 'that no words, however cruel, and the man, no matter how great the heat and passion may be, who slays his fellow-man upon no other provocation than mere words, is guilty of murder,' is not in accordance with the modern doctrine of our law, was not applicable to the case, and was very misleading to the jury. 3rd. Because his honor erred in charging the jury that every death that results from the unlawful act of another is murder. 4th. Because the charge of his honor was otherwise contrary to law."

The charge of Judge Aldrich, before whom the prisoner was tried, is set out in the "Case," and should be incorporated in the report of this case. We will therefore proceed to consider the several grounds of appeal in their order as stated, only referring to such portions of the charge as will be necessary for a proper understanding of the questions raised and considered.

The first ground presents two questions: 1st. Whether there was any error in saying to the jury that "malice will also be inferred from the use of a deadly weapon." 2nd. Whether intent and malice are one and the same thing, provided it shall first appear that the judge so instructed the jury. As to the first question, it will be observed that the words there quoted were not used by the Circuit Judge, but are taken from the language of the solicitor's ninth request, to which the judge responded in these words: "That is a presumption or rule, not so much of law as of common sense. Ordinarily, if a man in his senses uses a deadly weapon, in a way calculated to do great harm to another person, the law and common sense says that he intended the result which his act brought about." The rule is well settled that every sane man is presumed to intend the ordinary and probable consequences of any act which he purposely does; and this rule is applied even in capital cases. 3 Greenl. Evid., §§ 13, 14. This is plainly what the judge meant by the language he used, and therefore there was no error in this respect. But even if it be assumed that the judge must be regarded as adopting the language used in the solicitor's ninth request, quoted above, we still think there was no error. In 2 Bish. Cr. Law, sec. 680, it is said: "As a general doctrine, subject, we shall see, to some qualification, the malice of murder is conclusively inferred from the unlawful use of a deadly weapon, resulting in death." And to the same effect see 3 Greenl. Evid., §§ 145, 147. This doctrine has also been recognized in this State. See *State* v. *Toohey*, 2 Rice Digest, 105; *State* v. *Ferguson*, 2 Hill, 619; *State* v. *Smith*, 2 Strob., 77. It is true that the inference of malice drawn from the use of a deadly weapon may be rebutted by testimony, but in the absence of any such testimony malice may be and is inferred from the use of a deadly weapon, causing death.

The second inquiry arising under the first ground of appeal is as to the identity of intent with malice. But we do not find anything in the charge of the judge which warrants the idea that any such instruction was given to the jury. The jury were instructed that if the act which produced death be attended with such circumstances as indicate a wicked, depraved, and malignant spirit, the law will imply malice without reference to what was passing in the prisoner's mind at the time, and this was good law, as it was taken, word for word, from the opinion of the court in *State* v. *Smith*, 2 Strob., 77.,

The second ground of appeal likewise presents three inquiries : 1st. Whether provocation by words only will be sufficient to reduce a killing from murder to manslaughter. 2nd. Whether the language complained of in, this ground was applicable to the case. 3rd. Whether it was misleading to the jury. We will first consider the last two questions, which are really one, for we suppose that the language objected to as misleading is thought to be so because not applicable to the case as made by the testimony. But as none of the testimony is incorporated in the "Case," and the record does not furnish us with even a general outline of the circumstances attending this deplorable tragedy, it is impossible for us to say that these remarks were either inapplicable to the case made, or calculated to mislead the jury. On the contrary, we are bound to assume that they were applicable, as we cannot suppose that the Circuit Judge. in instructing the jury as to their duties in so grave a case, would allow himself to indulge in general observations that had no application to the case, and might therefore tend to distract the minds of the jury from the real issues they were to pass upon.

Turning, then, to the first inquiry, it will be observed that the judge, after explaining to the jury the difference between murder and manslaughter, used the language objected to, probably for the purpose of disabusing their minds of what seems to be a popular impression, that where the killing is done in sudden heat and passion, the crime will be manslaughter and not murder, without reference to the provocation received. It was, then, very natural for him to go on and explain the nature

of such provocation as would or would not be sufficient to reduce the killing from murder to manslaughter. It was in this connection that the jury were instructed, correctly as we think, that provocation by words only, no matter how opprobrious, would not be sufficient. That this has been the law of this State from time immemorial cannot be questioned, and we are not aware that any such modern doctrine as that contended for has ever been recognized in this State. On the contrary, one of the recent decisions of this court (*State v. Jacobs*, 28 S. C., 29) expressly holds the contrary. This broad statement of the doctrine must be understood as applying to a case where the death was caused by the use of a deadly weapon, as it may be different where the death results from the use of some agency not likely to produce death, as, for example, from a blow with the fist. But although, as we have said, there is nothing in the record furnished us to show the circumstances attending the homicide, yet the fact that the death in this instance was caused by the use of a deadly weapon sufficiently appears, as well from the judge's charge as from the agreement to amend the "Brief," made at the hearing, by stating that the prisoner fired two shots. We do not think, therefore, that the second ground of appeal can be sustained.

The third ground of appeal rests upon a misconception of the judge's charge. Indeed, it seems to be conceded in the argument of appellant's counsel, that the judge did not state, in terms, to the jury the proposition there excepted to, but that such is the inference to be drawn from the language used by him. We do not think that any such inference could properly be drawn from the language used. On the contrary, as it seems to us, the plain meaning of the proposition stated to the jury was that the law will imply that a person who does an unlawful act intended the natural and probable consequences of his unlawful act, and is therefore responsible therefor; and when read in connection with the illustration given of A intending to shoot B, fires upon him, intending to murder him, but misses B and kills C, then A would be guilty of murder, although he may not have had the slightest intention of killing C, or even injuring him in any way, the jury could not possibly have had a doubt as to the

9—34

meaning of the proposition, which was clearly correct, as was held in *State* v. *Smith*, 2 Strob., 77.

The other illustration given by the judge of one killing another in an attempt to commit suicide, and commented on by counsel for appellant in his argument here, as presenting an incorrect view of the law, will be considered, though the "Case," as prepared for argument here, contains nothing from which it can be inferred that there was any evidence out of which such a question could be raised. It is true that counsel, *in his argument*, does say that, according to the evidence, the defendant attempted to kill himself, and in doing so unfortunately killed his wife, who was attempting to prevent the suicidal act. But as we have often held that we cannot decide a case upon any testimony stated only in argument, and not appearing in the "Case" prepared for a hearing in this court, this matter is not properly before us. Inasmuch, however, as this is a case involving such grave consequences, we are not unwilling to depart from the well settled rule, and consider the propriety of what was said to the jury upon the subject of suicide, although there is no exception to that part of the charge.

The judge used this language in his charge: "In the eye of the law, self destruction—suicide—is an offence, it is an unlawful act, and if a man with a deadly weapon undertakes to take his own life, he is doing an unlawful act, and if in the commission or attempted commission of that act he takes the life of an innocent party standing by, then, in the eye of the law, that is murder." To this instruction there is no well founded exception. In 1 Russell on Crimes, 424 (3rd Am. edit.), it is said: "Whenever an unlawful act, an act *malum in se*, is done in prosecution of a felonious intention, and death ensues, it will be murder." Now, as suicide is an unlawful act, *malum in se*, and is a felony (1 Bish. Cr. Law, §§ 511–615), there can be no doubt that the proposition laid down by the judge is correct. We have carefully examined the case of *Commonwealth* v. *Mink* (123 Mass., 422, reported also in 25 Am. Rep., 109), cited by counsel for appellant on this point, and we do not think it is applicable, for the reason that in the State of Massachusetts they have a statute providing that "any crime punishable by death or

imprisonment in the State prison, is a felony, *and no other crime shall be so considered.''*   Suicide therefore is not a felony in that State, as from the very nature of the case it cannot be punishable ''by death or imprisonment in the State prison ;'' and yet in that very case Gray, C. J., in delivering the opinion of the court, intimates pretty plainly that one who, in an unsuccessful attempt to commit suicide, unintentionally kills another who is endeavoring to prevent it, is guilty of murder.   But in this State we have no such statute, and, on the contrary, sec. 2678 of the General Statutes, prescribing the form of the verdict of a coroner's inquest in a case of suicide, by the use of the term ''feloniously,'' expressly recognizes it as retaining its common law character as a felony.

The fourth ground of appeal is too general to require attention.   Nevertheless, *in favorem vitae,* we will not decline to consider such questions as we can gather from the argument were intended to be raised by that ground.   The first is as to the doctrine of moral insanity, as it is sometimes called, or uncontrollable impulse.   While it is not to be denied that there are cases in some of the States which recognize this doctrine as a defence against a charge of crime, yet it never has, and we trust never will, obtain a foothold in this State ; for we agree with Judge Sherwood when he said in the recent case of *State* v. *Pagels,* 92 Mo., 300 : ''It will be a sad day for this State when uncontrollable impulse shall dictate a rule of action to our courts.''   It is a matter that is not susceptible of proof, and to allow a person to escape the consequences of his criminal act by asserting that he acted under an impulse which he could not restrain, although he knew his act to be unlawful, would be dangerous if not destructive to the peace of society.   See *State* v. *Bundy,* 24 S. C., at page 444–5 ; *State* v. *Alexander,* 30 *Id.,* 74.   See also *Leache* v. *State* (22 Texas Ct. App., 279, reported also in 58 Am. Rep., 638), where the question is ably and elaborately discussed, and the ruling was in conformity to the view we have adopted.   In *Parsons* v. *State* (81 Ala., 577, to be found also in 60 Am. Rep., 193), the whole subject of insanity as a defence is most ably and elaborately discussed, and both sides of the question more immediately present-

ed here, will be found fully presented in the opinion of the court delivered by Somerville, J., and the dissenting opinion by Stone, C. J.

Under this ground the appellant's counsel further objects to the definition of malice as given by the Circuit Judge, because it omits the word intentionally, and claims that a correct definition should read : "Malice means the doing of an unlawful act *intentionally*, without justification or excuse." Perhaps this criticism might be well founded if we confined our attention solely to the particular sentence upon which it is based ; but when the whole charge is considered together, as the rule requires it to be, there is plainly no foundation for the exception. From what we can discover as to the nature of the case in which this charge was made, as well from the record as the argument here, it does not seem to us that the omission of this qualifying word in defining the word "malice" could possibly have prejudiced the prisoner. As we have seen, the law presumes that a person intends the natural and probable consequences of his own act, and it is for the party charged to show the absence of intention. Hence when it is shown that one has taken the life of another, without justification or excuse, the law will imply malice without reference to what was actually passing in the prisoner's mind at the time he committed the homicide.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to that court for the purpose of having a new day assigned for the execution of the sentence heretofore imposed.