**Theodore GRIFFIN, Appellant,**

v.

**George N. MARTIN, III, Warden; Attorney General of the State of S. C., Appellees.**

No. 85–6581.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1985.

Decided Feb. 27, 1986.

Rehearing En Banc Granted April 28, 1986.

Mary Rose Kornreich, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center (Steven H. Goldblatt, Director, Samuel Dash, Director, Martha J. Tomich, Appellate Law Fellow, Washington, D.C., on brief), for appellant.

Donald J. Zelenka, Chief Deputy Atty. Gen. (T. Travis Medlock, Atty. Gen., Columbia, S.C., on brief), for appellees.

Before MURNAGHAN, SPROUSE, and SNEEDEN, Circuit Judges.

MURNAGHAN, Circuit Judge:

*Habeas corpus* petitioner, Theodore Griffin, was, on September 30, 1980, convicted of murder in the Court of General Sessions for Richland County, South Carolina. An appeal to the South Carolina Supreme Court was unavailing.[1] On the filing on April 6, 1983 by Griffin of an application to the United States District Court for the District of South Carolina, Columbia Division, for a federal writ of *habeas corpus,* the matter was first referred to a magistrate, who, on October 4, 1983, recommended issuance of the writ subject to retrial within a reasonable time.

However, the district judge concluded otherwise. He withheld decision on the magistrate's recommendation pending the result in the appeal in a case, the outcome of which might affect disposition of Griffin's case, namely, *Thomas v. Leeke,* 547 F.Supp. 612 (D.S.C.1982). The appeal in that case, as a consequence of which a writ of *habeas corpus* was ordered to issue unless South Carolina were promptly to retry the applicant, was decided on January 12, 1984. *Thomas v. Leeke,* 725 F.2d 246 (4th Cir.1984).[2]

The district court, in the end, determined that *Thomas v. Leeke* did not control Griffin's case. He refused to issue the requested writ of *habeas corpus.*

From the time the application for the *habeas corpus* writ was first before the district court when it was filed on April 6,

---

1. *State v. Griffin,* 277 S.C. 193, 285 S.E.2d 631 (1981).

2. Petitions for rehearing and rehearing *en banc* were unavailing and a petition to the United States Supreme Court for *certiorari* was denied on October 1, 1984. *Leeke v. Thomas,* —— U.S. ——, 105 S.Ct. 18, 83 L.Ed.2d 148 (1984).

1983 until the district judge, by an order entered on July 26, 1985, rejected the recommendation of the magistrate, the elapsed time was over two years. The period from the time of publication of the Fourth Circuit opinion in *Thomas v. Leeke* until July 26, 1985, the date of the district court's denial of the *habeas corpus* writ, was in excess of a year.[3]

Griffin was embroiled in an unfortunate affair of the heart. Lawrence Wilson had gained the affections of Griffin's wife. On April 5, 1980, an occasion arose when Wilson drove up in his car at the home of Griffin's mother-in-law. When Griffin entered the car to talk to Wilson, the two passengers left. A discussion ensued. Griffin emerged from the car, turned around, and shot Wilson three times, fatally wounding him.

Absent the aspects of the case associated with the assertion of self defense and of provocation[4] made by Griffin, the evidence was overwhelmingly sufficient to justify, if not, indeed, to compel, the jury verdict of guilty of murder.

Griffin took the stand at the trial. He testified that, after a conversation with Wilson in which there were allusions to the relationship between Wilson and Griffin's wife of three or four weeks duration to which Griffin took exception, he got out of the car, wishing Wilson luck. Griffin further testified that he turned around after emerging from the car to see Wilson reaching under the seat. According to Griffin, he entertained a belief that Wilson kept a sawed-off shotgun under the seat of his car and, fearing it was about to be employed

against him, shot Wilson three times. That testimony constituted "some" evidence to establish the existence of self defense.[5]

Contradicting Griffin's testimony, there were statements that no weapon was found in the car, however, and there was testimony from witnesses gainsaying Griffin's representation that Wilson reached under the seat of the car or displayed any other menacing attitude. However, it is the state of Griffin's mind that controlled. For the purposes of the instant case it is uncontradicted that self defense may exist on appearances, whether accurate in fact or not, which would lead a man of ordinary prudence to conclude that the taking of steps in self defense was necessary.[6]

I

On those facts, we have two legal areas to enter. The first is immediately dispositive inasmuch as inherent contradiction in the trial court's instructions as to where the burden of proof lies on the issue of self defense requires us to reverse the district court's denial of a *habeas corpus* writ and to order the petitioner Griffin released unless South Carolina proceeds with reasonable dispatch to retry him. In fairness to the South Carolina judges a) who presided at Griffin's trial and b) who affirmed his conviction, it should be pointed out that their actions, on September 30, 1980 and November 24, 1981, respectively, antedated by several years the decision of *Thomas v. Leeke*, 725 F.2d 246 (4th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984), the other case arising from South Carolina which raises essential-

---

3. A petition seeking a writ of mandamus to move the district judge to action was filed by Griffin on July 19, 1985. The entry of the July 26, 1985 order mooted the petition. *In Re Griffin,* 786 F.2d 1153 (4th Cir.1986).

4. In the actual circumstances of the case as argued to us it is self defense rather than its less completely vindicating country cousin, provocation, on which Griffin relies.

5. As the case has evolved, no one denies that self defense was properly in the case. The differences between the parties relate to where as

between them the burden of proof properly lies. *See State v. Griffin,* 277 S.C. 193, 198–99, 285 S.E.2d 631, 634 (1981), where, in affirming the form of a self defense instruction given, the court in no way suggested that a burden of production on the issue of self defense had not been met. *Cf. State v. Linder,* 276 S.C. 304, 307, 278 S.E.2d 335, 337 (1981) ("We believe that sufficient evidence was placed in issue to submit the matter to the jury.").

6. *See State v. Herron,* 116 S.C. 282, 285, 108 S.E. 93, 94 (1921); *State v. Abercrombie,* 114 S.C. 241, 244, 103 S.E. 524, 525 (1920).

ly the same question as Griffin presents. *Thomas* held that instructions very similar to those employed at Griffin's trial were so inherently contradictory and confusing as to rise to the level of constitutional infirmity.

In Griffin's case, at the conclusion of the trial, the jury received the customary instruction that, presumed innocent throughout the trial, he remained so until proven guilty, with the requirement on the prosecution being proof of guilt of the crime beyond a reasonable doubt. The trial judge further instructed the jury that murder constituted the unlawful or felonious killing of any person with malice aforethought, either express or implied.[7] Moreover, the instructions to the jury went on to state "that malice is presumed from the willful, deliberate, intentional commission of a felony," murder being a felony, an unlawful act without just cause or excuse. The instructions continued: "malice means the doing of a wrongful act intentionally without just cause or excuse," and that malice "is presumed from the use of a deadly weapon."[8] The presumption of malice was explained to be rebuttable, with the jury "from all the evidence to determine whether or not malice has been prov-

en in this case beyond a reasonable doubt" with "the burden ... upon the State to prove malice by evidence satisfying [the jury] beyond a reasonable doubt."

With respect to self defense, the trial judge charged that "a person has a right to act in self defense" but that it "is an affirmative defense" and that the defendant was bound to prove it "by the greater weight or the preponderance of the evidence." That instruction was elaborated by an explanation that "if the defendant has failed to make out any one of the four elements of self defense, then his plea of self defense fails because he has to prove all four of them by the greater weight or the preponderance of the evidence."[9] Then, at the conclusion of the charge, a general reasonable doubt instruction was repeated specifically directed at self defense.[10] The instructions were objected to, but the objections were overruled, and the conviction of Griffin followed.

In *Thomas:*

The trial court attempted to charge the jury both that the burden of persuasion of self-defense was on the defendant, and that the prosecution had the burden of proving "every material allegation or claim of the indictment beyond every rea-

---

7. Except for the insertion of the phrase "unlawful or felonious" before the word "killing," that definition tracked the provisions of S.C.Ann. Code § 16–3–10. The appearance of "felonious" is explained by the language of S.C.Ann.Code § 17–19–30, providing that an indictment for murder shall be sufficient and good in law if it sets forth that "the defendant did feloniously, wilfully out of his malice aforethought kill and murder the deceased."

Beyond that, however, legislative attempts, S.C.Ann.Code § 16–3–10 in particular, to streamline the language of indictments do not, in any way, alter the common law requirements as to what must be proven in order to establish the essential elements of the crime. *State v. Rector,* 158 S.C. 212, 215, 155 S.E. 385, 386 (1930); *State v. Judge,* 208 S.C. 497, 505, 38 S.E.2d 715, 719 (1946).

8. Somewhat at odds with the two presumptions he had outlined, the trial judge added that malice would have to be determined by the jury to have been *proven* in this case beyond a reasonable doubt." (Emphasis supplied).

9. The instruction continued:

Now, what is meant by the greater weight or the preponderance of the evidence? Nothing more than the greater amount of truth as you find it to be from the evidence. If the preponderance of the evidence favors a plea of self defense, if the defendant has made it out by that measure of proof, then you find that the plea has been made out, then the defendant would be entitled to a verdict of not guilty at your hands by reason of such plea. On the contrary, if he had not made out all four of the elements that I have given you, then his plea fails; and you would consider whether or not the State has proven this defendant guilty of either murder or a lesser crime of manslaughter by evidence beyond a reasonable doubt.

10. If you have a reasonable doubt as to whether the defendant has made out his plea of self defense, give him the benefit of that reasonable doubt and find that he has; and write a verdict of not guilty. So you will give the defendant the benefit of every reasonable doubt which you have which arises in the trial of this case.

sonable doubt in order to obtain conviction." ... At the same time, the court instructed the jury that the accused must prove four elements of self-defense, and that "the accused, if she seek[s] to excuse the killing by relying upon the plea of self-defense, is required to establish such plea of self-defense by the preponderance or greater weight of the evidence.... If the scales remain even or if they tip ever so slightly in the State's favor, she has not met the required burden of proof."

725 F.2d at 250. The *Thomas* court concluded:

The court therefore had in one breath instructed the jury that the accused had the burden of proving self-defense by a preponderance of the evidence, yet in the other that the prosecution had to prove beyond a reasonable doubt that the killing had been felonious (and therefore unlawful) and with malice. Confusion in

the minds of the jury was inescapable with a charge that was unequivocally contradictory.

725 F.2d at 250–51. To like effect is *Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 1975–77, 85 L.Ed.2d 344 (1985).

We do not perceive a viable distinction between *Thomas* and *Franklin,* on the one hand and Griffin's case on the other. Consequently, the result must be the same. Griffin, like Thomas, must, absent prompt retrial and reconviction, be accorded the benefit of a release which the writ of *habeas corpus* provides.[11]

In *Thomas v. Leeke,* we stopped, having traversed the one area of contradictory instructions. We concluded that:

We need not reach the question of whether the due process clause prohibits in all instances the placing on the defendant of the burden of persuasion with regard to self-defense. It is enough, for the purposes of this case, to observe that

---

**11.** South Carolina seeks to avoid the impact of the *Thomas v. Leeke* opinion by pointing to a subsequent unpublished opinion, *Floyd v. Leeke,* 740 F.2d 961 (4th Cir.1984), which, to distinguish Griffin, rested on additional language in the jury instructions there given, not unlike that appearing at the end of the charge in Griffin's case, reading "If you have any reasonable doubt as to whether or not the plea [of self-defense] has been so made out you must give the defendant the benefit of that doubt and acquit him". An unpublished opinion is, of course, not a binding precedent and ordinarily should not even be cited by us or by one of the advocates. Fourth Circuit Rule 18.

Passing that technical difficulty, there are substantial other reasons why *Floyd v. Leeke* lacks persuasive force:

1) *Thomas v. Leeke* also had a very like "saving instruction" near the end of the charge, reading:

The accused is entitled to the benefit of every reasonable doubt arising upon the whole case after considering the testimony for and against any defense relied upon by the accused. It does not matter whether or not the preponderance of the evidence is in her favor if you entertain a reasonable doubt as to her guilt. For under those circumstances, it would be your sworn duty to acquit the defendant or to find the defendant "not guilty."

2) To the extent, if any, that *Floyd*'s ace was higher than *Thomas*' king, it in turn was trumped by the later *Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 1975–76 n. 8, 85

L.Ed.2d 344 (1985). That inherently contradictory instructions are given more than once, or that the correct one appears more often than the incorrect one does not eliminate the inherently contradictory nature of the charge.

3) An allocation of a· beyond-a-reasonable-doubt burden of proof to the State, however often repeated, cannot be relied upon to dissipate the confusion when elsewhere in the same charge the jury has been instructed that "he has to prove all [four elements of self defense] by the greater weight or the preponderance of the evidence." *See State v. Peterson,* 287 S.C. 244, 248, 335 S.E.2d 800, 802 (1985):

In the present case, the trial judge followed the erroneous instructions with the *Elmore* [*State v. Elmore,* 279 S.C. 417, 308 S.E.2d 781 (1983)] charge. Instead of replacing the unconstitutional malice charge, the *Elmore* charge was simply added to the end of the charge. Merely superimposing correct instructions over erroneous ones serves only to foster prejudice and confusion. *State v. Adams,* 277 S.C. 115, 283 S.E.2d 582 (1981).

Saying black is white is perhaps the ultimate in contradiction. The State has approached that same ultimate with: "The burden of proof of self-defense was squarely placed on the Defendant, but with the recognition that he was entitled to a reasonable doubt benefit as to whether he had acted in self-defense." Appellees' Brief, p. 24.

All that is written respecting *Floyd* applies with even greater force to the earlier *Maxey v. Martin,* 577 F.2d 735 (4th Cir.1978).

the court's instructions regarding the burden of proof were both conflicting and confusing. "Because proof of self-defense constitutes an absolute defense in that it renders the homicide justifiable, any error in the trial court's instruction concerning self-defense was necessarily prejudicial." *Wynn v. Mahoney,* 600 F.2d 448 (4th Cir.1979), *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979).

725 F.2d at 250. My colleague, Judge Sprouse, displaying a commendable disinclination to decide any more than is necessary, goes no further.[12] Normally, I too would avoid the proliferation of what might prove only to be dicta.

## II

It is, indeed, tempting to halt at the same wayside inn in Griffin's case. However, Griffin's case is not finally disposed of. He faces retrial. South Carolina has strenuously argued before us that it lies within its power to shift by statute, or by a common law development, the burden of persuasion on self-defense to the defendant. It seems evident, therefore, that the State's approach on a retrial of Griffin might well be to remove all ambiguity or contradiction in the type of charge employed in *Thomas* and in Griffin's case by leaving intact the language placing the burden of proof by a preponderance on the defendant and spelling out that proof by the prosecution beyond a reasonable doubt is *not* required insofar as absence of self defense is concerned.[13]

We have on occasion recognized, when a retrial looms as the consequence of a disposition of a case by us, and an as yet undisposed of question seems almost certain to arise upon retrial, the desirability, from the point of view of economy of court resources in time and effort, of addressing such a question during disposition of the

initial appeal. *E.g., Gay v. Wall,* 761 F.2d 175 (4th Cir.1985).

Here, not only is that concern present, but additionally there is a potential additional constitutional difficulty of no little consequence. If Griffin is tried again and the jury, absent all ambiguity, is instructed that the burden of persuasion as to self defense falls on him as the defendant, and he is convicted, there are two consequences, the possibility of each of which is substantial enough not to be easily dismissed. First, for reasons I shall elaborate, the instruction, with a high degree of probability, will be determined, somewhere along the way through South Carolina direct appeal and post-conviction proceedings or in federal *habeas corpus,* to have violated due process guarantees. Second, yet another retrial (a third prosecution) may be held impermissible because of due process concerns with overtones of double jeopardy. *See Reimnitz v. State's Attorney of Cook County,* 761 F.2d 405, 410 (7th Cir. 1985) ("... there must be some limit to the number of times the state can retry a person in the quest for an error-free trial ..."). *See United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976):

> The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions.

*Cf. United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971). An issue of fundamental unfairness precluding further retrial may arise should South Carolina proceed to convict, aware that the jury instruction imposing a burden of persuasion on the defendant as to self defense is constitutionally extremely suspect, and then, following vacation of a

---

**12.** He does concur to the extent that section IV concludes that the contradictory instructions are sufficient in their resulting unfairness to necessitate the grant of the writ, subject to retrial by South Carolina within a reasonable time.

**13.** In its Brief, at page 8, the State has asserted: "[A]n analysis of substantive South Carolina law does not support this conclusion by the Petitioner that the State has the burden of showing an absence of self-defense beyond a reasonable doubt...."

conviction for that reason, attempt to try Griffin yet again.

## III

Therefore, I have felt it incumbent on me, in the somewhat extraordinary character of the instant case, to enter a second area, or, more properly thicket, of no little importance since, I am fully convinced, after a review of the authorities, that an approach, placing the burden of persuasion as to self defense on the accused, even by a mere preponderance of the evidence, is constitutionally proscribed. South Carolina should not, in fairness, require Griffin to follow the arduous path of trying the case once more on a constitutionally impermissible basis and thereafter, through success on direct appeal or in pursuing yet again a writ of *habeas corpus*, only return to square 1, *i.e.*, to yet another—a third—trial at last abiding by the proper rules of the game. On the federal side, the untoward delay already endured by Griffin, unpalatable in almost any case, would be especially distasteful in light of the long and tortured path his quest already has taken.

I pursue the course of discussing whether the burden of persuasion as to self defense (or, more precisely, the absence thereof) must always remain with the prosecution with no little trepidation for the issue is one on which the Fourth Circuit has spoken in something which cannot properly be described as a unanimous voice. One need look no further than the spirited dissent of Judge K.K. Hall in *Thomas* itself (*see* 725 F.2d 252–254) to appreciate the complexities and the consequent differing points of view within the court.

As a preliminary matter, to clear the decks as it were, I address the portions of the charge enunciating the presumptions of malice from a) the willful, deliberate, intentional bringing about of the homicide [14] and b) the use of a deadly weapon. Inasmuch as some evidence of self defense had been introduced by Griffin,[15] those presumptions, *qua* presumptions, were simply eliminated from the case, and in that guise should never have been charged. It is true that, had Griffin failed to produce even some evidence to contest the existence of malice, the presumptions would have been proper for the prosecution manifestly should not be required to think up every conceivable defense, such as alibi, accident, identity, provocation, heat of passion, self defense and all the rest, and produce evidence to establish their absence when the defendant has done nothing to put such matters in issue. But, once some evidence has been produced (and Griffin took the stand in his own defense to testify in such a way that, if believed, might have led to an acquittal of him on the grounds of self defense) the production of "some evidence" removed the presumption of malice, an essential element of the crime charged, from the case.[16] *Davis v. Allsbrook*, 778 F.2d 168, 173 (4th Cir.1985): "The defendant need not meet any persuasion burden at all, but instead must only introduce some evidence to dissipate the presumption and require the state to prove the element of the crime beyond a reasonable doubt."

---

**14.** As Griffin concedes, the issue of the direct effect of the instruction creating a presumption of malice from willful, deliberate intentional commission of a felony is not before the Court because of his failure to raise it before the district court. However, it is simpler to consider it along with the other presumption deriving from the use of a deadly weapon. Doing so, in the end, has no effect on the outcome.

**15.** Malice aforethought is explicitly set forth in the statute, § 16–3–10, as an element of murder. Self defense is justification so there can be no malice, and hence no murder where the killing does not comport with the requirement that it be done without legal justification or excuse

before it becomes malicious. "... [A] malicious killing ... is done without legal justification, excuse, or extenuation, and malice has been ... defined as consisting of the intentional doing of a wrongful act ... without legal justification or excuse." *State v. Judge*, 208 S.C. 497, 505, 38 S.E.2d 715, 719–20 (1946). "Self-defense is wholly inconsistent with malice,...." *Guthrie v. Warden, Maryland Penitentiary*, 683 F.2d 820, 824 n. 5 (4th Cir.1982).

**16.** *State v. Harvey*, 220 S.C. 506, 514, 68 S.E.2d 409, 412 (1951) ("Malice is an essential ingredient of murder.").

The rule announced in *Davis v. Allsbrook* equally exists under South Carolina law. *E.g., State v. Rochester,* 72 S.C. 194, 200–01, 51 S.E. 685, 687 (1905):

> The authorities undoubtedly support the proposition that the law presumes malice from the mere fact of homicide. 4 Black, Com. 201; State v. Toohey, MSS. But this presumption is not applicable where the facts and circumstances attending the homicide are disclosed in evidence, so as to draw a conclusion of malice or want of malice as one of fact from the evidence. Presumptions of this class are intended as substitutes in the absence of direct proofs, and are in their nature indirect and constructive. The best evidence of the state of mind attending any act is what was said and done by the person whose motive is sought for. * * * If the evidence did not warrant the conclusion of malice, the jury should have so found, uninfluenced by any presumptions from the naked facts of the homicide. * * Where the circumstances preceding and attending an act of this character are full, as in the present case, the prisoner is entitled to the benefit of any doubt that may arise, and cannot be deprived of such benefit by any presumption of guilt arising by operation of law from the naked fact of the homicide....
>
> There is no doubt whatever of the isolated proposition that the law presumes malice from the mere fact of homicide, but there are cases as made by the proof to which the rule is inapplicable. When all of the circumstances of the case are fully proved, there is no room for presumption. The question becomes one of fact for the jury, under the general principle that he who affirms must prove, and that every man is presumed innocent until the contrary appears.

*State v. Henderson,* 74 S.C. 477, 479, 55 S.E. 117, 118 (1906) (approving a charge reading as follows: "The law implies malice, or presumes that a person was actuated by malice, where it appears that he intentionally killed another person, and no other fact in reference to the transaction is known. But if the facts attending the killing, the facts under which the killing was done, are known and are developed before the jury, then the implication of malice disappears."); *State v. Jackson,* 36 S.C. 487, 490, 15 S.E. 559, 560 (1892) (holding to be correct a charge of implication of malice from killing with a deadly weapon when "there was not a shadow of testimony tending to show any excuse or provocation...."); *State v. Jones,* 29 S.C. 201, 235–36, 7 S.E. 296, 314 (1888) ("[W]hile the law does presume malice ... yet when the facts attending the homicide are brought out, there is no room for the presumption, and the State must prove the malice from the facts and circumstances attending the homicide, without any aid from the artificial presumption. Of course, this, like all other facts, must be proved beyond a reasonable doubt, and not merely by the preponderance of the evidence.").

However, the inquiry does not necessarily end with the determination that presumptions of malice (either irrebuttable or rebuttable) were not properly charged in Griffin's case. We may assume, for present purposes, considering the jury instructions as a whole, that what have been denominated presumptions, on falling out of the case in their primary status as presumptions, nevertheless remained as permissive inferences,[17] items of a factual nature to be considered by the jury along with all the other evidence in the case, always subject to the requirement that the jury draw no conclusion of fact unless convinced of its existence beyond a reasonable doubt. *I.e.,* the burden of persuasion must have remained at all times on the prosecution. *See Francis v. Franklin,* —— U.S. ——, ——, 105 S.Ct. 1965, 1972–73, 85 L.Ed.2d 344 (1985). *Cf. County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979), which treated as identi-

---

17. *See State v. Levelle,* 34 S.C. 120, 127, 13 S.E. 319, 320 (1891) ("It is true that the inference of malice drawn from the use of a deadly weapon ...").

cal "the permissive inference or presumption." [18]

In this connection, one must not disregard the considerations that, (1) with the emergence of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) and *Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344(1985), well entrenched state practices, concerning in particular prosecutions for homicide, are having to undergo constitutionally imposed revision, (2) yet state law predominates where federal basic law is not contravened. It is not incumbent, for reasons still to be developed hereafter in this opinion, that the question be resolved of whether the jury instructions cast in terms of presumptions as to malice passed muster as descriptions of permissive inferences rather than as presumptions, or even as burdens of proof. We assume they did. *Cf. Frazier v. Weatherholtz*, 572 F.2d 994 (4th Cir.1978), *cert. denied*, 439 U.S. 876, 99 S.Ct. 215, 58 L.Ed.2d 191 (1978) which appears to regard something described in burden-of-proof language as actually but a permissive inference.

While I, therefore, would not rest decision on the point, it is hard to ignore the ambiguity inherently associated with the transformation of a rebuttable presumption into a permissive inference.[19] In other cases arising hereafter in South Carolina care taken to spell out in jury instructions precisely the extent to which presumptions may be employed and the role, if any, of permissive inferences may render it unnecessary for us to engage in a safari through that tangled undergrowth.[20] In all events, sufficient to the day the difficulties, if not the evils, thereof. I assume that, in Griffin's case, considering the instructions as a whole, the "presumptions" never served to relieve the prosecution of the burden of proof beyond a reasonable doubt or to place any burden of persuasion on the defendant.

With the presumptions issue put to one side, I turn to the question of whether, on retrial, Griffin may constitutionally be required to assume the burden of persuasion on self defense, assuming that, when, put to his country again, he once more satisfies the burden of production by coming forward with some evidence of self defense.

One thing is clear. The permissive inference approach is not available on the self defense issue. A charge that the defendant had the burden of making out an affirmative defense by the greater weight or the preponderance of the evidence "undeniably created a ... burden-shifting presumption." *Francis v. Franklin*, —— U.S.

---

**18.** "Such inferences do not necessarily implicate the concerns of *Sandstrom*", *Francis v. Franklin*, —— U.S. at ——, 105 S.Ct. at 1971; *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979). However, the situation is very clouded with respect to South Carolina presumptions for "[t]he very statement that the presumption 'may be rebutted' ... undeniably created an unconstitutional burden-shifting presumption with respect to the element of intent." *Francis v. Franklin*, —— U.S. at ——, 105 S.Ct. at 1973. *Cf. State v. Levelle*, 34 S.C. 120, 127, 13 S.E. 319, 320 (1891) ("It is true that the inference of malice drawn from the use of a deadly weapon may be rebutted by testimony...."). The trial judge in Griffin's case charged that a presumption of malice would be a rebuttable one.

**19.** *State v. Hewitt*, 205 S.C. 207, 213, 31 S.E.2d 257, 259 (1944):

The office and purpose of instructions are to enlighten the jury and to aid them in arriving at a correct verdict. It is error to give instructions which are calculated to confuse or mislead the jury.

**20.** *See State v. Peterson*, 287 S.C. 244, 247, 335 S.E.2d 800, 802 (1985):

The malice charge given in the case at bar was clearly erroneous. It used the terms "presumption", "rebuttable", and "implied and presumed" at least nine times. Every judge in South Carolina should delete from their malice charges all phrases denoting a presumption or a rebuttable presumption. These constitutionally infirm phrases should be replaced with terms such as "might infer" or "may be presumed" which denote a permissive inference. The judge should make it clear to the jury that it is free to accept or reject these permissive inferences depending on its view of the evidence.

at ——, 105 S.Ct. at 1973. South Carolina does not contend otherwise, insisting that it constitutionally may place on Griffin, as the defendant, the burden of persuasion on self defense.

The departure point for the constitutional jaunt which lies ahead is *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) where the Supreme Court laid down the constitutional axiom that the Due Process Clause requires a state to prove beyond a reasonable doubt "every fact necessary to constitute the crime" with which a defendant is charged. Following hard apace, the Supreme Court provided the legal profession with the teaching of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) to the effect that, heat of passion, on sudden provocation, being a common law factor relevant to guilt, or to a degree of guilt,[21] its absence, when the defense has been raised in the case by the defendant's production of some evidence, becomes a matter on which the burden of persuasion— proof beyond a reasonable doubt—rests with the prosecution.

Hence, if *Mullaney v. Wilbur* applies in Griffin's case, any retrial resulting in a conviction, in which the jury charge places a burden on him to prove self defense, by a preponderance of the evidence, would not survive another application for the writ of *habeas corpus*. He constitutionally would be able to insist that the jury properly should have been instructed that, subject only to the requirement that he again present "some evidence," absence of self-defense must be proven by the prosecution beyond a reasonable doubt. In *Mullaney v. Wilbur*, the common law of Maine cast the burden of persuasion as to the heat of passion affirmative defense[22] on the defendant, but that was held constitutionally impermissible and issuance of a *habeas corpus* writ by the district court was affirmed.

However, the apparently all embracing statement of constitutional principle uttered in *Mullaney v. Wilbur* did not long survive uncritical examination in the marketplace of constitutional exchange. The Supreme Court soon had occasion to decide *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). There, the Court distinguished, but in no way suggested that it was overruling, *Mullaney v. Wilbur*[23] in holding that the burden of persuasion by a preponderance of the evidence could be placed on the New York defendant who sought to make out the affirmative defense of extreme emotional disturbance.[24]

---

**21.** Under Maine law, heat of passion on sudden provocation would negative the element of malice aforethought, and, therefore, reduce the crime from murder to manslaughter.

**22.** In like vein, South Carolina law has sought to impose the burden of persuasion on self defense on the defendant. *E.g., State v. Judge,* 208 S.C. 497, 507, 38 S.E.2d 715, 720 (1946); *State v. Bolton,* 266 S.C. 444, 449, 223 S.E.2d 863, 865–66 (1976).

**23.** *Patterson v. New York,* 432 U.S. at 215, 97 S.Ct. at 2329. The *Mullaney* case is extensively cited and relied on in *Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), so can hardly be deemed to have been consigned to the constitutional trash heap. *See Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), recognizing the viability of *Mullaney* as a grounds for compelling the prosecution to assume the burden of proof beyond a reasonable doubt where self defense has been asserted as a defense to a murder charge.

**24.** The New York statutory defense shared some characteristics with the common law defense of heat of passion, each operating to reduce the severity of the crime from murder to manslaughter. Neither, however, constitutes a complete exoneration, which is, of course, an important characteristic of self-defense. Since a time prior to the formation of our nation, and hence before the existence of a Due Process Clause, even the one under the Fifth Amendment and *a fortiori* the one under the Fourteenth Amendment, a homicide committed in self-defense simply has been no crime. Between the thirteenth and sixteenth centuries in England self-defense became in law a vindication of a killing. *Mullaney, supra,* 421 U.S. at 692, 95 S.Ct. at 1886; *cf. Thomas v. Leeke, supra,* 725 F.2d at 251, n. 2.

Interestingly, in Maine, the jurisdiction which sought to place the burden of persuasion as to heat of passion or lack thereof on the defendant, absence of self-defense had, even prior to the time *Mullaney v. Wilbur* was decided, to be proven by the prosecution beyond a reasonable doubt. *Id.* 421 U.S. at 702, 95 S.Ct. at 1891.

The critical point to observe is that, in *Mullaney v. Wilbur,* absence of heat of passion under applicable Maine law was an essential element of the crime while the New York defense of extreme emotional disturbance "bears no direct relationship to any element of murder." [25] It may be that the difference in result between *Mullaney* and *Patterson* is related to the question of whether the crime existed at common law, when criminal intent and unlawfulness, in South Carolina, was each a necessary ingredient of the crime of murder, or first arose *after* adoption of the applicable constitutional due process guarantee. *See Holloway v. McElroy,* 632 F.2d 605, 624 (5th Cir.1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981) ("*Winship* makes clear that the States are bound by some of the deeply ingrained traditions of substantive fairness from our

common-law heritage....."). With a defense or partial defense such as heat of passion already in existence at the time of adoption of the applicable Due Process Clause (July, 1868 for the provisions of the Fourteenth Amendment) nothing was suggested by the *Patterson* Court which would permit allocation of the burden of persuasion to the defendant.

*Patterson* dealt with an ameliorating statutory provision enacted after the applicable Due Process Clause took effect.[26] Thus, no constitutional impediment stood in the way of conditioning the new and additional benefit to those accused of crime, first added to the law after the Due Process Clause had gone into effect. It was constitutional to require proof of the new amelioration by the accused by the preponderance of the evidence. New York, after

The Supreme Court referred to that judicial fact in justifying the placing of the burden on the state to prove a negative. Most significant is the consideration that, under the facts before the Court in *Patterson,* "the New York affirmative defense b[ore] no direct relationship to any element of murder." *Patterson, supra,* 432 U.S. at 201, 97 S.Ct. at 2322. "Malice aforethought is not an element of the [New York] crime." *Patterson v. New York,* 432 U.S. at 198, 97 S.Ct. at 2321. The New York statutory offense of murder was established by nothing more than the proof of causing a death and of an intent to do so. Extreme emotional disturbance was therefore not involved in the definition of the crime.

However, where the crime incorporates malice or unlawfulness within its essence, the justification which self defense presents fully knocks out the crime which the prosecution must establish beyond a reasonable doubt.

Just as importantly, the heat of passion dealt with in *Mullaney v. Wilbur* and extreme emotional disturbance at issue in *Patterson v. New York* are different in a significant quantum and temporal degree.

In determining whether New York's allocation to the defendant of proving the mitigating circumstances of severe emotional disturbance is consistent with due process, it is therefore relevant to note that this defense is a considerably expanded version of the common-law defense of heat of passion on sudden provocation and that at common law the burden of proving the latter, as well as other affirmative defenses—indeed, "all ... circumstances of justification, excuse or alleviation" —rested on the defendant. 4 W. Blackstone, Commentaries *201; M. Foster, Crown Law 255 (1762); *Mullaney v. Wilbur, supra,* [421

U.S.] at 693–694 [95 S.Ct. at 1886–1887]. This was the rule when the Fifth Amendment was adopted, and it was the American rule when the Fourteenth Amendment was ratified. *Commonwealth v. York,* 50 Mass. 93 (1845). *Patterson, supra,* 432 U.S. at 202, 97 S.Ct. at 2323. At 432 U.S. 207, 97 S.Ct. at 2325, "considerably expanded" became "substantially expanded."

It is of some relevance that, though for his purposes unsuccessfully, Maine's Attorney General, in *Mullaney v. Wilbur,* observed the substantial distinction between establishment of heat of passion (or failure to negate it), which would not abrogate the likelihood of loss of liberty and certainty of stigmatization and the establishment of a successful self defense which "would wholly exonerate" the defendant. 421 U.S. at 697, 95 S.Ct. at 1889.

**25.** *Patterson v. New York* was careful to emphasize that where a defense negates an essential element of the crime the *Winship* burden to prove the absence of the defense beyond a reasonable doubt remains on the prosecution. *Id.* 432 U.S. at 215–16, 97 S.Ct. at 2329–30. The New York statute did not make malice aforethought an element of the crime of murder. As is the case with South Carolina, the Maine statute did. *Holloway v. McElroy,* 632 F.2d 605, 622 (5th Cir.1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981).

**26.** The New York defense of extreme emotional disturbance first saw the light of day as an amendment in 1965 to the Penal Code. 1965 N.Y.Laws c. 1030. It, therefore, post-dated the Fourteenth Amendment and its Due Process Clause by nearly a century.

all, was under no constitutional compulsion to introduce the concept of extreme emotional disturbance as a defense into its criminal code at all. Malice was not an element of the New York crime. Hence, in electing to extend more mercy to criminal defendants than had theretofore existed, the legislature could choose how far the extension should proceed, and decide that it should not go the whole way to saddle the prosecution with the persuasive burden of disproof of extreme emotional disturbance beyond a reasonable doubt.[27] In short, in constitutionally permitted possession of the whole loaf, New York did not have to decide in exercising a donative impulse towards those accused of crime to give more than half. It could take the position that from the point of view of defendants half of the loaf was better than none.

Whether or not that is indeed the correct rationale of the differences between *Mullaney v. Wilbur* and *Patterson v. New York*, it is at least a possible, perhaps even a plausible, explanation. The controlling consideration for the purposes of Griffin's case is that, in South Carolina, unlawfulness and malice is each an essential element of the crime of murder. Self defense annihilates unlawfulness and malice and consequently absence of it must be proven by the prosecution beyond a reasonable doubt.

The principal argument which South Carolina could make is that murder does not include "unlawfulness" as one of its essential elements, inasmuch as murder is defined by statute[28] simply as killing of any person with malice aforethought, either express or implied.[29] South Carolina points to the absence in the definition of the word unlawful and emphasizes the longstanding practice of treating self defense as an affirmative defense. As we have seen, the latter consideration does not achieve anything because *Mullaney v. Wilbur* placed, as a constitutional imperative, the burden of persuasion as to absence of heat of passion on the prosecution despite the status of heat of passion, under Maine law, as an affirmative defense.

As to the other contention, the necessity for the fact at issue to be an essential element of the crime, the absence of "unlawfulness" in the statutory definition of murder is only an apparent omission, not a real one. First, the dropping of "unlawfulness" from the definition was in the interest of statutory streamlining. It did not have the purpose of achieving change of substance. *See* note 7, *supra*. Second, for an indictment for murder to be good and sufficient, it should include the word feloniously. S.C.Ann.Code § 17–19–30. Without one's becoming involved in a contorted lexicographical tangle, it seems that all felonies are unlawful, while the reverse is not necessarily the case. Some things which are unlawful are merely misdemeanors. *E.g., People v. St. Clair*, 244 Ill. 444, 446, 91 N.E. 573 (1910) ("[F]elonious was a word of more force and more comprehensive meaning than the word 'unlawful' ... an act cannot be feloniously done and not be unlawful.").

Third, the statutory definition has not altered in any way the ingredients which the common law deemed essential elements of the crime of murder. The definition now located in § 16–3–10 "in no wise affects ingredients which are necessary to constitute murder, but leaves them exactly and in every particular as they stood at com-

---

**27.** *Cf. United States v. Jenkins, et al.*, 780 F.2d 472, 475 (4th Cir.1986) ("South Carolina's right to jury trial applies only to those cases in which a trial by jury was required at the time of the adoption of the state constitution. *C.W. Matthews Contracting Co., Inc. v. South Carolina Tax Commission*, 267 S.C. 548, 230 S.E.2d 223 (1976); *McGlohon v. Harlan*, 254 S.C. 207, 174 S.E.2d 753 (1970).")).

**28.** S.C.Ann.Code § 16–3–10.

**29.** I have already addressed the role of malice as an essential element of murder and why it may be that presumptions of malice may pass constitutional muster as permissive inferences. To prevent any confusion as to why malice is introduced into the discussion again, I consciously concentrate instead on "unlawfulness," realizing, however, that in all probability what is said about it applies with equal force to malice.

mon law." *State v. Judge*, 208 S.C. 497, 505, 38 S.E.2d 715, 719 (1946). Consequently, the element of criminal intent for example, though not alluded to in § 16–3–10, still is, in South Carolina, an essential element of the crime of murder. *State v. Thrailkill*, 73 S.C. 314, 318, 53 S.E. 482, (1906) ("... criminal intent ... is an essential element in every common-law crime."). *Cf. State v. American Agricultural Chemical Co.*, 118 S.C. 333, 337, 110 S.E. 800, 802 (1920).

Unlawfulness was beyond any doubt an essential element of murder at common law. Chase's *Blackstone's Commentaries*, 4th ed., 1914, pp. 941–2:

> Murder is therefore now thus defined or rather described by Sir Edward Coke; "when a person of sound memory and discretion unlawfully killeth any reasonable creature in being, and under the king's peace, with malice aforethought, either express or implied." ... The unlawfulness arises from the killing without warrant or excuse....

Fourth, the necessary character of unlawfulness as an essential element of murder is not something which in South Carolina has been submerged in the mists of time. The trial judge in Griffin's case explicitly recognized its importance when he charged that murder constituted *"the unlawful or felonious killing ... with malice aforethought."* [30]

Fifth, an assault committed with intent to kill leading to a killing constituted, at common law, in South Carolina, murder. *State v. Rector*, 158 S.C. 212, 215, 155 S.E. 385, 386 (1930). Assault was, at common law, "an *unlawful* setting upon one's person." Chase's *Blackstone's Commentaries*, 4th ed., 1914, p. 675 (emphasis supplied).

Sixth, the South Carolina statutory definition of manslaughter is "the *unlawful* killing of another without malice." S.C. Ann.Code § 16–3–50 (emphasis supplied). *"The* distinguishing element between mur-

der and manslaughter is that of malice." *State v. King*, 158 S.C. 251, 298, 155 S.E. 409, 426 (1930) (emphasis supplied). Here is a justifiable case for application of the maxim *expressio unius est exclusio alterius.* Two crimes differ in a single particular only, the presence of malice in one, its absence in the other. Since one expressly makes unlawfulness an element of the crime, consequently, the other does so by implication. *Compare* the recognition by the language of S.C.Ann.Code § 16–3–10 that the element "malice" also may be express or implied.

Seventh, manslaughter is a lesser included offense of murder. *State v. Gandy*, 283 S.C. 571, 573, 324 S.E.2d 65, 66 (1984). It would be anomalous in the extreme for the greater offense to require less proof than the lesser. Indeed an ultimate in illogicality would be reached if a murder defendant were deemed to have the burden of proof on self defense, bearing in mind that in South Carolina heat of passion, *i.e.*, provocation, a defense to reduce murder to manslaughter, will, just as it does in Maine, have, by reason of *Mullaney v. Wilbur*, which is precisely in point, to be proven by the State beyond a reasonable doubt.

Eighth, some truths are indeed self-evident. When a killing is, by reason of self defense, rightful not wrongful, *i.e.*, is lawful, there is no crime. Ergo, unlawfulness is an essential ingredient of the crime. There is, in South Carolina law, "a right of self-defense." S.C.Code § 16–23–410 ("Nothing contained herein ... shall be construed to abridge the right of self-defense ..."); *State v. Brooks*, 252 S.C. 504, 510, 167 S.E.2d 307, 310 (1969).

Hence, unlawfulness under the South Carolina law of homicide is an ingredient of murder. The burden of proof cannot constitutionally be imposed upon the defendant. "Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be

---

**30.** A malicious killing involves the doing of a wrongful, *i.e.*, an unlawful, act. *See* note 15, *supra.*

either proved or presumed is impermissible under the Due Process Clause." *Patterson v. New York*, 432 U.S. at 215, 97 S.Ct. at 2329. Absence of provocation which would serve to reduce the crime from murder to manslaughter, around which the decision in *Mullaney v. Wilbur* centered, is constitutionally not different from absence of self defense, so, unless self defense, having been injected into the case by some evidence from the defendant, is proven by the prosecution beyond a reasonable doubt not to be present, the defendant is insulated from conviction of any crime of homicide whatever.[31]

Griffin was and in any retrial would be wrongly convicted by a jury charged that he had to prove self defense by the greater weight or the preponderance of the evidence.

South Carolina's law making unlawfulness an essential element of murder therefore compels that result on the federal constitutional level regardless of other South Carolina rules seeking to allocate the burden of proof differently. The rationale which indisputably harmonizes *Mullaney v. Wilbur* and *Patterson v. New York* is that imposition of any burden of persuasion on a criminal defendant, once an issue of fact has been injected into a case, can constitutionally only occur when both of two factors are present. One, the fact must not be an essential element of the crime, *and*, two, the burden of proof as to the fact or its absence must be assigned to the defendant by the law of the state seeking to punish the crime.

For states compelled, following the decision in 1975 of *Mullaney v. Wilbur*, to face up to a wholesale restructuring of their criminal procedures the prospect has not been uniformly pleasing. It is a human trait to resist change. What was good enough for our fathers and our grandfathers often does prove to be good enough for us. Also, at first blush, it sounds rather contradictory to say that what a defendant has the burden of proving can be considered to be a necessary ingredient of the crime. What one side has to prove the other side is unlikely to regard as an essential element of its case. However, that facile approach is to overlook entirely the teaching of *Mullaney*. The State of Maine was held constitutionally required to prove absence of heat of passion although traditionally the burden had uniformly been placed on the defendant. Appreciation of the rationale no doubt is, perhaps, made more difficult by a dogged reluctance to accept that a fact and its absence are but two sides of the same coin, the upper and the nether side.

Consequently, some courts, those of South Carolina among them, have taken refuge in the burden of proof criterion alone to classify a statute assigning the burden of persuasion to the defendant as meeting the terms of *Patterson v. New York*, when actually the essential element of the fact in question as part of the crime inexorably pushes the statute into the *Mullaney v. Wilbur* camp. The paramount consideration was that, regardless of to whom the state law essayed to assign the burden of proof, heat of passion, present or absent, was an essential element of the crime. Absent it spelled out murder, present manslaughter.

It is the same with self defense. Absent we have murder; present there is no crime at all.

When those state court rules which have sought to apply *Patterson v. New York*, without giving due weight to the status of the crucial fact as an essential element of the crime, collide with the federal rule which derives from the due process clause, the federal rule, not the state one, is the immovable object. *E.g., Holloway v. McElroy*, 632 F.2d 605, 624–25 (5th Cir.1980), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981). *Cf. Adkins v. Bordenkircher*, 674 F.2d 279, 282 (4th Cir. 1982), *cert. denied*, 459 U.S. 853, 878, 103

---

**31.** *See Holloway v. McElroy*, 632 F.2d 605 (5th Cir.1980), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981) for a detailed explication of why such must be the case.

S.Ct. 119, 173, 74 L.Ed.2d 104, 142 (1982) [32] with *State v. Alexander*, 161 W.Va. 776, 781–82, 245 S.E.2d 633, 637 (1978). [33]

That is the explanation of why the South Carolina decisions in *State v. Bolton*, 266 S.C. 444, 449, 223 S.E.2d 863, 865–66 (1976); *State v. Atchison*, 268 S.C. 588, 599, 235 S.E.2d 294, 299 (1977), *cert. denied*, 434 U.S. 894, 98 S.Ct. 273, 54 L.Ed.2d 181 (1977) (simply following *Bolton* as binding authority, without exposition of the rationale); *State v. McDowell*, 272 S.C. 203, 207, 249 S.E.2d 916, 918 (1978) (*Id.*); *State v. Crocker*, 272 S.C. 344, 345 n. 1, 251 S.E.2d 764, 765 n. 1 (1979) (*Id.*); *State v. Linder*, 276 S.C. 304, 313, 278 S.E.2d 335, 340 (1981) (*Id.*); *State v. Griffin*, 277 S.C. 193, 198, 285 S.E.2d 631, 634 (1981) (*Id.*); *State v. Finley*, 277 S.C. 548, 552, 290 S.E.2d 808, 810 (1982) (*Id.*), holding that, self defense being an affirmative defense, the burden of proof by a preponderance of the evidence is to be allocated to the defendant are simply inappropriate for present purposes.

With the perspective of time and the authorities appearing since 1977, the South Carolina Supreme Court on occasion has appeared to back away, in part at least,

from the rule in *Bolton*, suggesting that the jury instructions on self defense, after explicating the four elements comprising self defense should clearly place the burden of persuasion on the prosecution, beyond a reasonable doubt. [34] However, that attempt to achieve a reconciliation between evident differences of federal and state law suffered a set back in *State v. Hardy*, 283 S.C. 590, 593, 325 S.E.2d 320, 322–23 (1985), which approved as consistent with *Davis* an instruction that placed on the defendant the burden of proving self defense by the greater weight or preponderance of the evidence. Consequently I cannot be sanguine that the precise problem that I have perceived as likely to arise upon Griffin's retrial will not do so. That is so, despite the latest word as of the present moment that, while the casting of the burden of proof as to self defense on the defendant is not error, nevertheless, the *Davis* charge is to be used from this time forward. *State v. Glover*, 284 S.C. 152, 154, 326 S.E.2d 150, 151 (1985), *cert. denied*, —— U.S. ——, 105 S.Ct. 2147, 85 L.Ed.2d 503 (1985). The thought cannot be dismissed that South Carolina law, as it currently stands, what-

**32.** [T]he Supreme Court has long admonished that the prosecution must prove every element of a criminal charge beyond a reasonable doubt. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, the burden of persuasion on affirmative defenses may be shifted to the defendant. *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The West Virginia Supreme Court of Appeals has classified "alibi" as such a defense, to be sustained by the accused. *Patterson* defined affirmative defense as one that

does not serve to negative any facts of the crime which the State is to prove in order to convict of [the crime charged.]

*Id.* at 206–07, 97 S.Ct. at 2325. Restated, it is a defense of mitigation or justification; the *prima facie* elements of the crime are presumed true. An alibi, however, negates *every* fact necessary to prove a breaking and entering; the defendant could not commit the offense if he was elsewhere at the time. When viewed under the *Patterson* standard, the West Virginia court's characterization of the alibi as an affirmative defense must be rejected. (Emphasis in original).

**33.** Alibi is an affirmative defense.... "When ... [a defendant] ... elects to take advantage of any authorized defense under the law of this State, he may be required to carry a burden of going forward with the evidence and carrying a burden of persuasion to a degree not greater than by a preponderance of the evidence. The State is entitled to define the burden which he must carry if his particular defense is to be sustained, provided that this does not lessen the burden of the State to prove every material element of the crime beyond a reasonable doubt.

**34.** While sustaining the validity of the *Bolton* charge, the South Carolina Supreme Court recommended, for future cases, an instruction providing:

If you have a reasonable doubt of the defendant's guilt after considering all the evidence including the evidence of self-defense, then you must find him not guilty. On the other hand, if you have no reasonable doubt of the defendant's guilt after considering all the evidence including the evidence of self-defense then you must find him guilty.

*State v. Davis*, 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984).

ever it requires in the way of a charge of burden of proof beyond a reasonable doubt placed on the prosecution, will, at the same time, continue to permit incorporation elsewhere in the instructions of an assignment of burden of persuasion as to self defense to the defendant. The continuation of that practice, I am forced to conclude, would be simply wrong. So to hold, however, in my view of matters, simply is not enough since reprosecution is bound to follow. I consequently have still felt constrained to address a question I would otherwise prefer to avoid, in order to insure that Griffin will receive a constitutionally acceptable retrial.

Since unlawfulness and malice indubitably are essential elements of the South Carolina crime of murder, and absence of self defense is consequently also an ingredient of the crime, one fortunately is not called upon to consider in the abstract the manifest complexities which would present themselves should the legislature of South Carolina undertake to strike out unlawfulness and malice as essential elements of murder, thereafter enacting a statute providing for the burden of persuasion on self defense to be reallocated to the defendant. It may be argued, if and when that should

ever happen, that logically, for any common law crime, a defense antedating July, 1868, could not be so restructured.[35]

The South Carolina legislature, however, has not sought to do so, and the courts of the state are unlikely to ignore established precedent of long duration.[36]

For similar reasons, there is no occasion to consider the consequences should South Carolina seek to abrogate entirely "the right" of self defense. The question is not presented in Griffin's case, and is unlikely to arise. I fully appreciate the risks inherent in seeking to apply logic in a vacuum and refrain from doing so. The concept of substantive due process is currently out of favor. The authors of Jeffries and Stephan, *Defenses, Presumptions and Burden of Proof in the Criminal Law*, 88 Yale L.J. 1325, 1367–68 (1979) allude to "the decline and disgrace of substantive due process" yet, in almost the same breath, describe diminution of inhibitions on reliance on substantive due process, suggesting that "[s]ubstantive due process has experienced a revival among Supreme Court justices and commentators."[37]

**35.** In this connection an important self-limiting aspect of the opinion in *Patterson* should not be overlooked. It stated:

> This view may seem to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes. But there are obviously constitutional limits beyond which the States may not go in this regard.

432 U.S. at 210, 97 S.Ct. at 2327.

*Holloway, supra*, 632 F.2d at 625 interprets both *Mullaney* and *Patterson* to the effect that "despite a State's characterization of an issue as being an 'affirmative defense,' the State may not place the burden of persuasion on that issue upon the defendant if the truth of the 'defense' would necessarily negate an essential element of the crime charged."

**36.** The substantial plausibility of the claim that absence of self-defense is constitutionally required to be proven by the prosecution beyond a reasonable doubt in all events is recognized in *Engle v. Isaac*, 456 U.S. 107, 122, 102 S.Ct. 1558, 1568, 71 L.Ed.2d 783 (1982). However, the issue was not there reached because of the procedural default of the convicted individuals involved under *Wainwright v. Sykes*, 433 U.S. 72,

97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See also Moran v. Ohio*, —— U.S. ——, 105 S.Ct. 350, 354–55, 83 L.Ed.2d 285 (1984) (dissent by Justices Brennan and Marshall from denial of *certiorari*); *but see, McElroy v. Holloway*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981) (dissent by Justices Rehnquist and Burger, from denial of *certiorari*).

**37.** It may very well be that self defense is so embodied in our jurisprudence as a consideration totally eliminating any criminal taint that absence of self defense is inescapable, and, under all circumstances, an essential element of the crime, whenever self-defense is introduced into the case through the defendant's production of some evidence. *Holloway v. McElroy, supra*, 632 F.2d at 636 n. 49. As *Mullaney v. Wilbur* was at pains to point out, the status as an essential element of the crime, while often a conclusive indication that the state must assume the burden of proof beyond a reasonable doubt, need not be the exclusive one.

> Moreover, if *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in

Earlier I have alluded to a possible absence of uniformity in the views of members of the Fourth Circuit on the matter of whether self defense, if denominated an affirmative defense by the state's legislature, may become the defendant's burden to prove, *i.e.*, the burden of persuasion may be allotted to him or her. Therefore, I turn briefly to the cases, bearing in mind, however, that, in the end, our varying views of the matter must defer to subsequent expressions by the Supreme Court in, especially, its recent holding in *Francis v. Franklin*, decided April 29, 1985. Such an examination of the authorities suggests that, while differences of nuance perhaps abound, in substance the cases can all be reconciled.

In *Frazier v. Weatherholtz*, 572 F.2d 994 (4th Cir.1978), the jury was charged that the burden of proving self defense was on the defendant, not however to prove its existence beyond a reasonable doubt, "nor even by the greater weight of the evidence but only to the extent of raising in the minds of the jury a reasonable doubt ..." considering "all of the evidence and circumstances in the case." A decision in favor of the Commonwealth of Virginia relied to a marked degree on the conclusion that *Patterson v. New York* permitted allocation of the burden of proof, where self defense has

its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment.

421 U.S. at 698, 95 S.Ct. at 1889.

It is difficult to the point of impossibility to imagine a right in any state to abolish self defense altogether, thereby leaving one a Hobson's choice of almost certain death through violent attack now or statutorily mandated death through trial and conviction of murder later. If such legislative power is beyond the state's grasp, perhaps the same is true of legislation, regardless of the elements of a crime it defines, which attempts to force a defendant who has put in evidence of self defense to prove that justification by a preponderance of the evidence or, indeed, by any other standard.

It is perhaps not amiss to point out once again that, in making it unlawful for anyone to point a gun at any other person, the South Carolina legislature has been careful to point out: "Nothing contained herein shall be construed to abridge the *right* of self-defense...." (Emphasis supplied). Code of Laws of South Carolina § 16–23–410. In *State v. Brooks*, 252 S.C. 504, 510, 167 S.E.2d 307, 310 (1969), the South Carolina Supreme Court spoke of "the right of self-defense." Perhaps, South Carolina, by those legislative and judicial utterances, intended to refer to an inalienable right.

It may well be that the essential-elements-of-the-crime approach, in the final analysis, while it has served to dispose of many cases, masks the fundamental grounds actually underlying *In re Winship, Mullaney v. Wilbur, Patterson v. New York, Francis v. Franklin, Reed v. Ross*, and related cases. Indeed, the proper step may be to evaluate the magnitude of the consequences of allocating the burden of proof to the defendant. *See* Jeffries and Stephan, *Defenses, Presumptions and Burden of Proof in the Criminal Law*, 88 Yale L.J. 1325, 1362, 1365–66 (1979). Self defense is an ultimate in magnitude, since it establishes the total absence of crime. It is a

complete exoneration. The extreme emotional disturbance defense, on the other hand, must be judged on the basis of its newly introduced components which augment the defense of heat of passion. Allocation of the burden of proof to the defendant as a trade-off for providing him with a defense greater than previously had existed does not arouse concerns as to fundamental fairness, especially since what is involved, in any event, is not complete exoneration, but rather the reduction of the crime from murder to manslaughter.

An answer to that intriguing possibility would perhaps have been forthcoming had New York sought to allocate the burden as to self defense to someone accused of murder. Then, the question would arise whether, though lack of extreme emotional disturbance is not an essential element of the crime of murder, absence of self defense is, or, whatever the rationale, whether in all events self defense must still be proven by the prosecutor beyond a reasonable doubt with no burden of persuasion on the defendant.

However, New York has not presented an opportunity to resolve that question. While extreme emotional disturbance is defined as an affirmative defense and so is to be proved by a preponderance by the defendant, N.Y.Penal Code § 25.00, self defense is an ordinary defense which "when asserted by the defendant, must be disproved by the People beyond a reasonable doubt." *Id.* §§ 35.00, 35.15 and Practice Commentaries by Arnold D. Hechtman to § 35.-00.

The temptation to spin the gossamer even finer can lead one rather far afield. Could an argument be made that extreme emotional disturbance is comprised of two parts: 1) heat of passion and 2) the considerable or substantial expansion made by the New York legislature, and that, consequently, the burden up through and including heat of passion must remain with the prosecution, with allocation to the defendant only possible as to the components contained in the considerable expansion?

been raised, to the defendant since self defense is an affirmative defense under Virginia law. Without entering a discussion of whether that conclusion will withstand scrutiny in light of the later cases of *Sandstrom v. Montana* and *Francis v. Franklin,* I note that the opinion a) addressed but one of the problems, *i.e.,* to whom state law assigned the burden of proof, only conclusorily accepting that the burden of proof never was assumed by the defendant and that the state had to prove beyond a reasonable doubt every fact necessary to constitute the crime, and b) did not spell out the essential elements of the crime. In any event, the "burden" placed by the trial court's instructions actually, when analyzed, created no more than a permissive inference, requiring a verdict of not guilty if a reasonable doubt as to the absence of self defense remained after consideration of all the evidence and circumstances of the case. The presence of the word "burden" in the charge employed by the Virginia court which tried the defendant was, from the point of view of one defining "burden" in the customary way, unfortunate, but a reading of the charge as a whole makes it evident that no burden of persuasion whatever was cast upon the defendant. The Court was at most alluding to a burden of production, for the burden disappeared, once evidence was introduced, leaving only a permissive inference of fact, to be considered under the prevailing rule that the burden of proof beyond a reasonable doubt continued to remain on the prosecution.

Such a conclusion concerning the significance of *Frazier v. Weatherholtz* to the status of Virginia law is reinforced by the decision of *Hodge v. Commonwealth,* 217 Va. 338, 341, 228 S.E.2d 692, 695 (1976), which held that instructions of the type employed at the trial in *Frazier v. Weatherholtz* involved only the production of some evidence, with the jury required to find the presumed or inferred fact beyond a reasonable doubt. That is to say, the

instruction called for only a burden of production[38] or a permissive inference. In Griffin's case, to the contrary, the jury charge placed on the defendant the burden to prove self defense "by the greater weight or the preponderance of the evidence." That was a burden of persuasion, so the case is distinguishable from *Frazier v. Weatherholtz* in what appears to be a controlling way.

Next came *Wynn v. Mahoney,* 600 F.2d 448, 449 (4th Cir.1979), *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979). A jury charge was given that:

> In order to reduce the crime to voluntary manslaughter the defendant must prove, not beyond a reasonable doubt, but simply to your satisfaction that there was no malice on his part and in order to excuse his act altogether on the grounds of self defense, the defendant must prove not beyond a reasonable doubt but simply to your satisfaction that he acted in self defense.

600 F.2d at 449. Since, under the North Carolina law defining the essential elements of the crime, the instruction imposing a burden of persuasion on the defendant was improper, the court affirmed a grant of the *habeas corpus* writ observing that: "The Supreme Court has not yet considered the proper allocation of the burden of proof with regard to self-defense." *Wynn v. Mahoney,* 600 F.2d at 450.

Thereafter the Fourth Circuit considered *Baker v. Muncy,* 619 F.2d 327 (4th Cir. 1980) where Virginia law again came under scrutiny. An instruction calling on the jury to presume premeditation in a first-degree murder case was held to require a writ of *habeas corpus* unless a reasonably prompt retrial occurred because the presumption required more than a production of some evidence, amounting to a mandatory rebuttable presumption rather than a permissive inference. The court rested in part on the status of premeditation as an

---

**38.** *See Wynn v. Mahoney,* 600 F.2d 448, 451 n. 4 (4th Cir.1979), *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979).

element of first-degree murder, relying, to distinguish *Frazier v. Weatherholtz*, on the assertion there made (the validity of which is in no way vouched for, and, in light of later cases, may be questioned) that the absence of self defense is not an element of murder under Virginia law.

The next case, *Adkins v. Bordenkircher*, 674 F.2d 279, 282 (4th Cir.1982), *cert. denied*, 459 U.S. 853, 878, 103 S.Ct. 119, 173, 74 L.Ed.2d 104, 142 (1982), flatly rejected a claim that West Virginia law could constitutionally, by defining a defense as "affirmative," shift the burden of persuasion as to the defense of alibi to the defendant, and thereby render *Patterson v. New York* applicable. *See* notes 32 and 33, *supra.*

In *Guthrie v. Warden, Maryland Penitentiary*, 683 F.2d 820, 824 (4th Cir.1982), a self defense instruction given in a Maryland proceeding which imposed a burden of persuasion on the defendant was deemed unconstitutional because Maryland law makes absence of self defense an essential element of the crime so that issuance of the writ of *habeas corpus* was ordered, unless retrial were to take place in a reasonable period of time.

Then came *Morris v. State of Maryland*, 715 F.2d 106, 110 (4th Cir.1983), which dealt with a charge in a first-degree murder case imposing the burden to prove justification on the defendant, not beyond a reasonable doubt, but by a preponderance of the evidence. Judge Ervin, speaking for the court, with Judge Hall in dissent, stated:

> *Guthrie* is dispositive of the present appeal. Like self-defense, "[t]he excuse of accident is not, of course, an affirmative type of defense but is rather a negation of the central element of an intentional killing." *Morris* [*v. State*, 33 Md. App. 185] 364 A.2d [588] at 591 [1976]. The fourteenth amendment requires that the state shoulder the burden of proving beyond a reasonable doubt all of the elements of a crime. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This necessarily forbids the state to put the burden of proving the negation of one of those elements on the defendant, for that is but another way of requiring the defendant to disprove an element of the offense. *See Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.E.2d 508 (1975).

715 F.2d at 110.

To make the story complete, it is necessary to mention *Frye v. Procunier*, 746 F.2d 1011 (4th Cir.1984), *cert. denied*, ––– U.S. –––, 105 S.Ct. 2707, 86 L.Ed.2d 723 (1985). There, in a case arising from Virginia, a charge on the alibi defense requiring the jury to consider all the evidence and then, if reasonable doubt persisted, to acquit, was held, in effect, to create only a permissive inference leaving the burden of proof beyond a reasonable doubt always on the prosecution, not a mandatory presumption. Such an approach is, of course, foreclosed in Griffin's case by the explicit instruction that under South Carolina law the defendant had to prove self defense by a preponderance of the evidence.

The cases from the Fourth Circuit, consequently, abundantly compel the conclusion that the saddling of the defendant with the burden of persuasion as to self defense is constitutionally impermissible. Even if that observation, strictly speaking, applies only to other states in the circuit besides South Carolina, the language of the cases, dealing with federal constitutional law, on every rational basis has the same impact for South Carolina purposes. In South Carolina, criminal intent (inferentially) and unlawfulness (normally by inference perhaps, but in Griffin's case explicitly, in view of the trial judge's language in his charge) as well as malice prepense (explicitly) are essential elements of the crime of murder. Griffin could hardly, on the established and uncontradicted facts, assert that he did not intend to kill the victim. His whole defense came down to the absence of unlawfulness and malice, which is demonstrated wherever self defense exists. The present case reduces itself simply to whether the burden of proof on self defense, or more precisely the absence thereof, falls upon the prosecutor, once the issue has

been activated by, as here, the introduction of some evidence by the defendant. As a practical matter, it is just impossible, in light of the authorities both within and without the Fourth Circuit, as they now stand, to conclude otherwise than that to cast a burden of persuasion on Griffin, respecting self defense when he is retried, and then introduces some evidence of self defense, would be a constitutional error. That is the consideration which has created for me an obligation to address the matter to alert the State of South Carolina authorities of the risk that hovers over the scene.

Bearing in mind the sea-change which has occurred in the last decade and a half since the appearance of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and the need for a period of time to allow for the required adjustments in state practices, I refrain from opining whether an approach with respect to the presumption of malice, reducing mandatory presumption (irrebuttable or rebuttable) to permissive inference despite use of the very word "presumption" will continue to serve in the future. I merely observe that the technique permitting that chameleon treatment of language grew out of a need to reconcile the current realities with general past practices. For the future, it seems to me that jury instructions: 1) should take into account that as to malice the burden placed on the defendant is only one of production, and, only if the defendant has totally failed to produce (*i.e.*, introduce) some evidence of lack of malice, should the jury be charged that the defendant's malice is presumed; 2) should not include, if some evidence of lack of malice has been introduced by the defendant, any presumption of malice, which consequently must be proven by the prosecution beyond a reasonable doubt; 3) should make clear that, if some evidence has been introduced of self defense, the burden of persuasion

as to its absence must be met by the prosecution beyond a reasonable doubt; and 4) should conclude with the observation that the willful, deliberate, intentional commission of a felony and the use of a deadly weapon each permits an inference of fact, subject, however, to scrutiny by the jury under the proof-beyond-a-reasonable-doubt standard.

Following that course would greatly minimize any possibility of a conviction's being vacated on the grounds of contradictory and confusing use of words, which, if we go back to the beginning of this opinion, is, after all, the rationale directly applicable.

## IV

Finally, it has been suggested that, even assuming that the existence of an error of constitutional magnitude has, in Griffin's case, been shown to exist, nevertheless, since our review has been not by direct appeal but by way of consideration of a district court's denial of an application for a federal writ of *habeas corpus*, the applicant must go beyond a showing that the error was harmful to establish that the error occasioned fundamental unfairness.[39] *E.g., Fulton v. Warden, Maryland Penitentiary*, 744 F.2d 1026, 1031, 1033 (4th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 3532, 87 L.Ed.2d 655 (1985), where 1) in one instance proof of absence from the scene of the crime for five minutes out of a possible 3½ hours during which the crime could have been committed did not elevate a constitutional error wrongfully placing on the defense a burden of proving alibi to the status either of harmful error or of fundamental unfairness, and 2) in the other case independent evidence in the form of fingerprints of the defendant at the scene of the crime established that the alibi was a fabrication, untrue beyond any reasonable doubt.[40]

**39.** *Cooper v. State of North Carolina*, 702 F.2d 481, 483 (4th Cir.1983) ("In collateral review of a jury charge, the court can grant relief only if a stringent standard is met by the petitioner: that of demonstrating that 'the offending instruction

is so oppressive as to render a trial fundamentally unfair.'").

**40.** Similarly an erroneous shifting of the burden of proof on malice to the defendant did not warrant issuance of a *habeas corpus* writ where the defendant did "not contend that the murder

Griffin's situation, however, does not faintly resemble *Fulton* or *Hyman*. He has raised a factual issue the resolution of which in his favor would permit a conclusion by the jury that self defense had not been eliminated as a possibility beyond a reasonable doubt. As to the issue of inherently contradictory instructions, it would be anomalous to have granted the writ (conditionally on failure of the State of South Carolina promptly to retry) in the *Thomas* case, which is not substantially distinguishable, while turning it down for Griffin. In any event, it is fundamentally unfair to allow a serious adverse result to stand which, on proper instructions, could, if the jury had been adequately charged, have resulted in an acquittal.

With respect to the more wide ranging question of where the burden of persuasion must constitutionally be allocated upon a retrial where Griffin introduces some evidence of self defense, Judge Sprouse has again, in a manner conforming to customarily applicable rules of prudence, concluded that he has no occasion to express himself. I, on the other hand, for reasons previously expressed believe that matter

requires consideration. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) affirmed the grant of a writ of *habeas corpus* under circumstances where the defendant argued only for a proof allocation burden which would *lessen*, from murder to manslaughter, the crime of which he was convicted. It would skew justice substantially not to allow the same result for someone whose contentions as to where the burden properly lay should have been heeded since correct jury instructions might well have led to a jury verdict of exoneration, so that he would leave the court a free man, acquitted of any crime whatsoever. That, simply stated, would constitute a glaring example of fundamental unfairness.[41]

It should be emphasized that the thrust of what appears in this opinion reflects but the insistence on a constitutionally fair trial. A retrial in accordance with the ground rules laid down in *Mullaney v. Wilbur* may, with a high degree of probability, result in reconviction. Witnesses contradicted Griffin's testimony, stating that Griffin was the aggressor and that the

---

of the robbery victim was unaccompanied by malice." *Hyman v. Aiken*, 777 F.2d 938, 941 (4th Cir.1985). Indeed, for reasons earlier explained the absence of even "some evidence" questioning the presence of malice left the malice issue fully resolved in the State's favor. While the court assumed "[f]or the purpose of this opinion" that the malice instruction was erroneous, the assumption was probably more generous treatment than that to which the defendant was entitled.

**41.** *Cf. Mullaney v. Wilbur*, 421 U.S. at 700–01, 95 S.Ct. at 1890:

These interests are implicated to a greater degree in this case than they were in *Winship* itself. Petitioner there faced an 18-month sentence, with a maximum possible extension of an additional four and one-half years, *id.* [397 U.S.], at 360, [90 S.Ct. at 1070], whereas respondent here faces a differential in sentencing ranging from a nominal fine to a mandatory life sentence. Both the stigma to the defendant and the community's confidence in the administration of the criminal law are also of greater consequence in this case, since the adjudication of delinquency involved in *Winship* was "benevolent" in intention, seeking to provide "a generously con-

ceived program of compassionate treatment." *Id.* at 376 [90 S.Ct. at 1079] (Burger, C.J., dissenting).

Not only are the interests underlying *Winship* implicated to a greater degree in this case, but in one respect the protection afforded those interests is less here. In *Winship* the ultimate burden of persuasion remained with the prosecution, although the standard had been reduced to proof by a fair preponderance of the evidence. In this case, by contrast, the State has affirmatively shifted the burden of proof to the defendant. The result, in a case such as this one where the defendant is required to prove the critical fact in dispute, is to increase further the likelihood of an erroneous murder conviction. Such a result directly contravenes the principle articulated in *Speiser v. Randall*, 357 U.S. 513, 525–26 [78 S.Ct. 1332, 1341–42, 2 L.Ed.2d 1460] (1958):

"[W]here one party has at stake an interest of transcending value—as a criminal defendant his liberty—th[e] margin of error is reduced as to him by the process of placing on the [prosecution] the burden ... of persuading the fact-finder at the conclusion of the trial...."

See also *In re Winship*, 397 U.S. at 370–72 [90 S.Ct. at 1075–76] (Harlan, J., concurring).

victim had no weapon and took no threatening action. They also described the situation as one in which Griffin faced no obstacle to retreating unscathed from the scene. Against that, however, Griffin took the stand and, under oath, described the victim as reaching under the seat of the motorcar in which he was sitting to get a gun. A factual issue involving credibility, therefore, has been presented, and for its resolution by the jury the prosecution must assume the burden of proof beyond a reasonable doubt.

It cannot be overemphasized that it is the jury's function, not the court's, to decide whether absence of self defense had been proven beyond a reasonable doubt. What an appellate court would have found, had it been the fact-finder, is legally irrelevant and should not serve to establish that no fundamental unfairness had occurred in the way in which Griffin was tried. Our system entrusts the jury with the important fact-finding function, assigning the burden of persuasion beyond a reasonable doubt to the prosecution. When the jury's right to make the findings pursuant to that standard has somehow been invaded, an appellate court cannot properly excuse the lapse through resort to a conclusion that, although two results in direct opposition to one another were permissible, guilty or not guilty, the jury certainly would have convicted.

### V

Accordingly, the judgment is reversed with directions that a writ of *habeas corpus* shall issue unless, within a reasonable time, Griffin is retried.

REVERSED.

SPROUSE, Circuit Judge, concurring:

I concur in the result reached by Judge Murnaghan, but solely on the ground that reversal is required by our decision in *Thomas v. Leeke*. I, therefore, agree with

what Judge Murnaghan has written on pages 1172 through 76 of his opinion. Judge Sneeden has written in dissent that, even if the instructions were contradictory and, therefore, erroneous, those circumstances did not render the trial fundamentally unfair. He has written persuasively, but for the reasons articulated by Judge Murnaghan on pages 1190 through 91 of the opinion, I feel that once we accept that the instructions given at Griffin's trial were constitutionally infirm under *Thomas*, we are required to hold that the trial was fundamentally unfair.

I assume, for the sake of analysis, that it may be possible to examine the South Carolina self-defense burden shifting rule against our holdings in *Frazier, Guthrie,* and *Wynn* to determine if it violates *In re Winship, Mullaney,* and *Sandstrom* as we have interpreted them. I also agree that *Adkins, Baker,* and *Davis* from our court, and *Engle, Ulster,* and *Franklin* from the Supreme Court, leave open a number of lively questions concerning burden shifting and presumptions in general.[1] I do not think it is appropriate, however, to decide here the basic question of whether South Carolina in Griffin's next trial can constitutionally shift to him the burden of proving self-defense by a preponderance of the evidence. I understand Judge Murnaghan's concern. In his usual scholarly style, he has canvassed the cases dealing with this current constitutional controversy and provided great insight into possible answers to questions which are conceivably still open.

I agree with much of his legal analysis but disagree with much of his semantic conclusions, especially in regard to the elements of the crime of murder in South Carolina and the consequences of those definitional problems. The appropriate course for this court, however, is to leave those problems for the later day upon which they might arise. In *Thomas*, 725 F.2d at 250, we said:

---

1. Over vigorous dissents, the Supreme Court has twice declined to address the issue of self-defense burden shifting treated by Judge Murnaghan. *Moran v. Ohio,* — U.S. —, 105 S.Ct. 350, 83 L.Ed.2d 285 (1984); *McElroy v. Holloway,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981).

We need not reach the question of whether the due process clause prohibits in all instances the placing on the defendant of the burden of persuasion with regard to self-defense. It is enough, for the purposes of this case, to observe that the court's instructions regarding the burden of proof were both conflicting and confusing. "Because proof of self-defense constitutes an absolute defense in that it renders the homicide justifiable, any error in the trial court's instruction concerning self-defense was necessarily prejudicial." (citation omitted).

I see no compelling reason for a more expansive holding in this case since *Thomas* is virtually identical in all relevant respects. It is not appropriate to formulate a new and broader constitutional principle when the appeal can be decided on a narrow and settled rule of constitutional law—particularly one which we have so recently established as controlling in this circuit. *See Wood v. Georgia,* 450 U.S. 261, 264–65, 101 S.Ct. 1097, 1099–1100, 67 L.Ed.2d 220 (1981); *Kremens v. Bartley,* 431 U.S. 119, 136–37, 97 S.Ct. 1709, 1718–19, 52 L.Ed.2d 184 (1977) (quoting *Liverpool, N.Y. & P.S.S. Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885)); *United States v. Berberian,* 767 F.2d 1324, 1325 (9th Cir.1985).

SNEEDEN, Circuit Judge, dissenting:

I strongly disagree with the majority's conclusion that the trial court's jury instructions violated the Constitution. Furthermore, even if the jury instructions were flawed, I believe the facts of this case clearly mandate a holding that any error

committed was harmless. For these reasons, I must dissent.

### I.

The testimony at trial fairly depicts the defendant as a cold-blooded killer rather than a man who was "embroiled in an unfortunate affair of the heart," to quote the delicate phraseology of Judge Murnaghan. Two state witnesses testified that they saw the petitioner shoot Lawrence Wilson as Wilson, unarmed, sat in his car with his hands on the steering wheel.[1] Having fired three shots into his victim's body, Griffin was not yet ready to leave the scene. Wilson managed to open his car door, get out, and run a short distance.[2] Griffin, still armed, pursued him.[3] He pointed the gun at Wilson but did not discharge the weapon.[4] A bystander testified that he heard Griffin say, "nobody touch me because they get the same thing."[5]

Griffin's aggressive behavior continued after the shooting. He sought out his estranged wife Emma, advised her that he had shot Wilson, and threatened to kill her.[6] Emma Griffin testified that, at the time of the shooting, she had been separated from the petitioner for one month.[7]

Standing meekly against this damning evidence is the petitioner's own testimony. Griffin testified that, after discussing his estranged wife's relationship with Wilson, he wished him luck and got out of Wilson's car. He told the jury that, as he was leaving, he looked back and saw Wilson reach under his seat.[8] Griffin stated that he believed Wilson was reaching for a gun so he fired at him.[9] Griffin admitted, however, that Wilson had not pulled a gun on him before[10] and that the two men had not

1. *See* testimony of Eugene Dixson, Transcript at 13–14; testimony of Shirley Ann Wilson, Transcript at 47–48, 71.

2. Testimony of Eugene Dixson, Transcript at 14.

3. *Id.*

4. Testimony of Eugene Dixson, Transcript at 14; testimony of Shirley Ann Wilson, Transcript at 47.

5. Testimony of Eugene Dixson, Transcript at 14.

6. Testimony of Bertha Brown, Transcript at 84; testimony of Emma Griffin, Transcript at 101.

7. Testimony of Emma Griffin, Transcript at 100.

8. Testimony of Theodore Griffin, Transcript at 127.

9. *Id.*

10. Testimony of Theodore Griffin, Transcript at 136.

argued when they conversed prior to the shooting.[11]

Having heard all the testimony in this case, and after being advised that they must give the benefit of any reasonable doubt to the defendant, the jury convicted Theodore Griffin of the murder of Lawrence Wilson. In this appeal from the denial of his petition for a writ of habeas corpus, Griffin contends that by placing upon him the burden to prove self-defense, the state violated the due process clause of the fourteenth amendment. He also argues that the jury instructions, which placed the burden on him to prove self-defense while imposing on the state the burden to prove malice and unlawfulness beyond a reasonable doubt, were contradictory and confusing and thus violative of the due process clause.

## II.

I begin my analysis of the law governing this case by noting that a habeas corpus petitioner faces a stricter standard of proof when challenging an allegedly erroneous jury charge. The harmless error standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) is inappropriate. Instead, the flawed instruction must so infect the entire trial that the resulting conviction violates the due process clause. *See, e.g., Hyman v. Aiken*, 777 F.2d 938, 941 (4th Cir.1985); *Fulton v. Warden, Maryland Penitentiary*, 744 F.2d 1026, 1032 (4th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3532, 87 L.Ed.2d 655 (1985).

In the present case, I also note the well-settled rule in the Supreme Court and the Fourth Circuit that states may create affirmative defenses and may place upon the defendant the burden of proving the existence of facts that form the basis of these defenses. *See Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (upholding New York statute requir-

ing defendant to prove the defense of actions under the influence of extreme emotional distress); *Cooper v. State of North Carolina*, 702 F.2d 481 (4th Cir.1983) (upholding jury instruction that placed upon the defendant the burden of proving insanity); *Frazier v. Weatherholtz*, 572 F.2d 994 (4th Cir.), *cert. denied*, 439 U.S. 876, 99 S.Ct. 215, 58 L.Ed.2d 191 (1978) (holding that it is not unconstitutional to place the burden of proving self-defense on the defendant.) The instant case, therefore, does not present a novel question of law.[12] I do not believe that South Carolina improperly shifted to the defendants the burden of proving an element of the crime charged because the state courts have not made absence of self-defense an element of malice murder.

Turning to the issue of jury confusion, I do not believe the instructions given confused the jury. The district court has adequately summarized the redeeming features of the jury charge:

The trial judge carefully explained the elements of murder, and emphasized that the State must prove them beyond a reasonable doubt. The trial judge then compartmentalized the defendant's burden and the elements of the affirmative defense the defendant must prove. The trial judge also instructed the jury to consider whether the State had proved its case beyond a reasonable doubt, once the jury had determined that the defendant had failed to prove his affirmative defense of self-defense. Finally, the court inserted a 'savings clause,' instructing the jury to give the defendant the benefit of any reasonable doubt concerning the plea of self-defense, and, on the case as a whole, 'you will give the defendant the benefit of every reasonable doubt which you have which arises in the trial of this case.'

Joint Appendix at 82. It is clear to me, therefore, that this case is distinguishable

---

**11.** *Id.* at 140.

**12.** For an excellent analysis of the constitutionality of requiring defendants to prove an affirmative defense, *see Thomas v. Leeke*, 725 F.2d 246,

252–54 (4th Cir.) (Hall, J., dissenting), *cert. denied,* —— U.S. ——, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984).

from *Thomas v. Leeke,* 725, 725 F.2d 246 (4th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984).[13] If the jurors perceived a conflict in the instructions at all they were ordered to resolve all doubts in favor of the defendant.

Finally, even if there were errors in the jury instructions, the mistakes were harmless. The evidence overwhelmingly indicated that Griffin shot and killed an unarmed man as he sat motionless in his automobile with his hands in plain view. It was an unprovoked murder. The jury could draw no other conclusion. The self-defense claim bordered on absurdity, especially since Griffin himself testified that he had not argued with Wilson, had not been threatened by Wilson, and had not seen a weapon in Wilson's possession on the night of the slaying. Not a shred of evidence remotely suggested that a reasonable man would so fear for his life that he must fire a weapon at Wilson.

### III.

In conclusion, I restate my view that the jury charges did not deny Griffin due process of law. Furthermore, it is inconceivable to me that, based on the facts of this case, any error committed in charging the jury could be anything but harmless. I would therefore affirm the lower court's decision to deny Griffin's petition for a writ of habeas corpus.

---

**13.** The district court noted that, in fact, the jury instructions in this case were remarkably similar to instructions which were upheld in *Floyd*

*v. Leeke,* 740 F.2d 961 (4th Cir.1984) (unpublished opinion). *Floyd* was decided after *Thomas v. Leeke.*